IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LINDA FLINT EDGE,<br>  Plaintiff,<br><br>v.<br><br>NORFOLK FINANCIAL CORPORATION<br>and DANIEL W. GOLDSTONE,<br>  Defendants. | )<br>)<br>)<br>)  No.  04-12134 DPW<br>)<br>)<br>)<br>) |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT**

Plaintiff submits this memorandum in opposition to Defendants' Motion to Dismiss or, Alternatively, for Summary Judgment.

**I. INTRODUCTION**

Plaintiff has sued Defendants Norfolk Financial Corporation ("Norfolk") and Daniel W. Goldstone for violations of the federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.*, based upon representations contained in collection letters sent to her. These letters are attached to her Complaint as Exhibits 2 through 4. Defendants have moved to dismiss Plaintiff's Complaint for lack of subject-matter jurisdiction pursuant to the Rooker-Feldman doctrine and for summary judgment on their affirmative defenses that Plaintiff's claims are barred by judicial estoppel and claim and issue preclusion. Defendants also move for summary judgment on the issue of their liability for claims based upon Exhibit 1, dated September 3, 2003. It is unclear on what basis Defendant Goldstone asserts that he is not liable on Plaintiff's claims, as the matter is not asserted in their motion and no procedural ground is stated in their memorandum, raising the issue.

**II. STANDARD OF DECISION**

Defendants have moved both to dismiss Plaintiff's complaint under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction pursuant to the Rooker-Feldman doctrine and for summary judgment under Rule 56. When reviewing a dismissal for lack of subject matter jurisdiction based on the Rooker-Feldman doctrine, the Court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff. *Long v. Shorebank Development Corp.*, 182 F. 3d 548 (7th Cir. 1999). The issue on Defendants' motion to dismiss portion is a "pure (or nearly pure) question[] of law. . . ." *Valentin v. Hospital Bella Vista*, 254 F.3d 358 (1st Cir. 2001).

Summary judgment may be granted only when the movant demonstrates *both* that there is no genuine issue of material fact *and* that the movant is entitled to judgment as a matter of law on the uncontested facts. Fed. R. Civ. P. 56(c); *Roy v. Inhabitants of the City of Lewiston*, 42 F. 3d 691, 694 (1st Cir. 1994). All inferences and conclusions must be drawn in favor of the nonmoving party. *Barbour v. Dynamics Research Corp.*, 63 F. 2d 32, 36 (1st Cir. 1996). This Court need not go beyond the Complaint in this case, however, because the Defendants' attachments are irrelevant to the issues involved herein, due to their incorrect assumption regarding what claims Plaintiff asserts.

## III. FACTUAL BACKGROUND

Defendant Daniel W. Goldstone ("Goldstone") is the president, treasurer, clerk, sole director of and "contact person" for corporation Defendant Norfolk Financial Corporation ("Norfolk"). Rosmarin Aff. ¶ 5. With discovery, Plaintiff will show that Norfolk is a large volume debt collector that buys portfolios of post-default charged-off debt and proceeds to collect the debt by filing hundreds, possibly thousands, of small claims actions against consumers in most Massachusetts court districts and in other New England states. Plaintiff will show that

Goldstone, as the sole officer and director of Norfolk, determines and implements the policies and procedures used by Norfolk, including the content of the dunning letters Norfolk sends to consumers. Plaintiff will show that Goldstone personally participated in the content of these letters. Three of the letters received by Plaintiff bore Goldstone's name on the signature line under Norfolk's letterhead. Plf's Complt., Exh. 1 - 3.

Plaintiff is an individual consumer who received some of Norfolk's and Goldstone's dunning letters regarding a Providian account. Plf's Complt., Exh. 1 - 4. Defendants failed to itemize the balances in their duns, which, Plaintiff will show, Defendants knowingly and willfully kept increasing either by some arbitrary amount or by including charges for something other than interest, without specifying what those other charges were. Plaintiff will also show that several other representations in Defendants' collection letters were false and misleading.

When Plaintiff received Defendants' letters she did not understand how the balances in them had been determined. Edge Aff. ¶ 2. The first letter Plaintiff received, dated September 3, 2003, states at the top, "<u>Amount Owed:**$1,640.19**</u>," without specifying what this amount includes. The next letter she received, dated October 14, 2003, states at the top, "Balance Including Interest: $1,663.56." Defendants' October 21, 2003 letter states, "Balance: $1,667.55" and their December 4, 2003 letter states "Balance Owed: $1,732.63." None of these letters itemize the amount stated. Only the October 14 letter states that the balance includes interest. The other letters merely state "balance," "balance owed" and "amount owed," and these balances keep increasing. Yet the balances do not increase by the same percentage each time: between September 3 and October 14, the increase is $23.37, 12.7% over a period of 41 days; between October 21 and December 3, the increase is $65.08, 33.1%, over 43 days; and between October

3

14 and 21, the increase in amount is $3.99, 12.5% over 7 days.[1]

| Date Spread | No. of Days | Am't of Increase | Percentage Increase |
|---|---|---|---|
| 9/3 - 10/14 | 41 | $23.37 | 12.7% |
| 10/21 - 12/3 | 43 | $65.08 | 33.1% |
| 10/14 - 10/21 | 7 | $3.99 | 12.5% |

In addition, Defendants' letters contain several other knowing and willful misrepresentations and misleading and outright false statements. Providian sold the account in question to Norfolk, Goldstone Aff.. ¶ 2, and Norfolk stated so in their September 3 and October 14 letters to Plaintiff. Exh. 1 -2. Defendants' December 4 letter, however, states that, "[b]ecause of a new program our client is running, we have been authorized '**settle**' the remaining balance . . . at a **significant discount** . . . ." [Emphasis in original.] In fact Norfolk owned the debt, did not have any "client" and was not "authorized" by any third party to do anything.

Defendants' December 4 letter contains another false statement. It states that Norfolk "has filed suit against you for the $1,732.63 balance owed by you." The suit filed by Norfolk against Plaintiff on November 24, 2003 was for $1,664.70, plus $40 court costs, for a total of $1,704.70, not for $1,732.63. Moreover, this was less than the amounts stated as balances in both the October 21 and December 4 letters. This also raises a question of fact as to how Defendants calculated the balances and what was included in them.

Defendants' letters also knowingly and willfully misrepresent that the Plaintiff's opportunity to settle with Norfolk for a discounted amount is limited in time. Their October 14 letter states that Norfolk would settle for 50% of the balance, but that the opportunity would

---

[1] Curiously, the Notice of Claim filed on November 24, 2003 in small claims court (which serves as a complaint), stated that "the defendant [Plaintiff here] owes $$1,664.70 – an amount *less* than the amount represented as the "Balance" in Defendants' *earlier* October 21 letter.

4

"only be available for a limited time." Defendants' September 3 letter, dated 41 days earlier, which also offered a 50% settlement "if payment is received within thirty (30) days" is evidence that Defendants' settlement offers were not limited in time. Defendants were still offering to settle for a reduced amount in their October 21 and December 4 letters, even at a "**significant discount**" (December 4) and in fact settled for a reduced amount at court on January 8, 2004.

Defendant Goldstone's signature is on the Statement of Small Claim and Notice of Trial filed with the court when Norfolk filed suit against Plaintiff in Boston Municipal Small Claims Court on November 24, 2003.[2] O'Connor Aff. ¶ 2. Norfolk was represented by counsel at court on January 8, 2004, and Defendant Goldstone was not present. *Id.* The small claims court was presided over by a clerk-magistrate. *Id.* Plaintiff, appearing *pro se*, did not file an answer, nor did she present any defense or counterclaim. Goldstone Aff. ¶ 3. There was no trial, no evidence was presented and the clerk-magistrate made no findings. Edge Aff. ¶ 3; O'Connor Aff. ¶ 2 Rather, Plaintiff met with Norfolk's counsel outside the courtroom and made a payment arrangement for an amount less than Norfolk was seeking. *Id.* Although Plaintiff had agreed to make a lump sum payment of $1,080.99 on or before March 1, 2004, on January 29, 2004, 14 business days after the judgment and over one month before Plaintiff's payment was due, Defendants made a request for an execution that was premature under the small claims court rules.[3] O'Connor Aff. ¶ 3.

---

[2] Goldstone incorrectly states in his affidavit at ¶ 3 that suit was filed on October 21, 2004. Because Norfolk was represented at court by counsel other than Goldstone (O'Connor Aff. ¶ 2; Defs' Memo p.9), the assertions in his affidavit as to what Plaintiff said or did or did not do there are not made upon personal knowledge and are therefore improper as support for a motion for summary judgment. Fed. R. Civ. P. 56(e). However, these assertions are irrelevant to Plaintiff's claims and do not support Defendants' motion, as discussed *infra*.

[3] Massachusetts Uniform Small Claims Rule 7(f) provides that: "Execution shall issue to the prevailing party upon written request *after* fifteen business days of the date of the judgment...." [Emphasis supplied]

5

## IV. Plaintiff's FDCPA Claims Do Not Involve the Amount of the Debt

Defendants' motion is based on procedural grounds, not the merits of the Plaintiff's FDCPA claims.[4] However Plaintiff must address the merits of her claims to some extent herein in order to demonstrate that she has valid claims other than the one Defendants assume she asserts and to which their procedural arguments under Rule 12(b)(1) are directed. In doing so, she relies on the allegations of her complaint and the Court should draw all inferences and conclusions in her favor from her well-pleaded facts therein.

This case does not involve the amount of the debt or the judgment obtained thereon. It involves issues of misrepresentations, false and misleading statements and incomplete information in Defendants' communications to Plaintiff. Defendants' misrepresentations go beyond their presentation of un-itemized and confusing balances of the debt in their dunning letters. They encompass misrepresentations that Plaintiff's opportunity for settlement was limited, that Defendants had a non-existent "client" who had "authorized" a settlement, and of the amount for which they had filed suit. All of these claims arose prior to entry of the small claims court judgment. None of these claims or issues involve or question the small claims court's judgment in any way. Defendants have *assumed* wrongly that the Plaintiff is somehow disputing the amount of the debt or seeking to contest the small claims court's judgment, which she does not.[5] Rather, Plaintiff's claims are for statutory violations that occurred prior to the date of the judgment in small claims court. These violations were knowing and willful.

---

[4] It is unclear what the bases for Defendant Goldstone's assertion in Defendants' memorandum that he is not personally liable are. See discussion *infra* and Rosmarin Aff. ¶ 4.

[5] Defendants are correct that Plaintiff has not made any payments on the agreed judgment. Paragraph 36 of Plaintiff's Complaint mistakenly alleges that Plaintiff's actual damages include payments to Norfolk on the debt, due to a drafting error. With the Court's permission, Plaintiff would amend that paragraph of her Complaint removing the words " payments to Norfolk on the debt and."

6

### A. *Defendants' Failure to Itemize the Balances in Their Collection Letters Violated the FDCPA*

None of Defendants' letters itemize the stated balances; only one indicates that the balance presented therein includes interest. The balances keep increasing, but not by the same percentage, indicating that the increases are not attributable to application of a constant rate of interest throughout. Therefore, something else must explain the differential increases. But the letters do not say what that is. To what these increases in the balances are attributable is a question of fact for which Plaintiff does not have the answer at this time and she must be permitted to do discovery in order to find out.

When Plaintiff received Defendants' letters she did not and could not know what was included in the balances stated therein. If the increases were due to anything other than the actual rate of interest provided by the contract that created the debt, Plaintiff will show that, at the time the letters were sent, there was no basis in the law for the imposition of any other charges. The increases would thus be amounts "not authorized by the agreement creating the debt or permitted by law," in violation of FDCPA §§ 1692e and 1692f(1). *See Shula v. Lawent*, 359 F. 3d 489 (7th Cir. 2004) (defendant's demand for court costs plaintiff did not owe violated §§ 1692e and 1692f(1)).

Regardless of what caused the irregular increases in the balances in Defendants' collection letters, Defendants "had an obligation to clearly and fairly communicate information about the amount of the debt to [Plaintiff]. This includes how the total amount due was determined if the demand for payment includes add-on expenses. . . ." *Fields v. Wilber Law Firm, P.C.*, 383 F. 3d 562 (7th Cir. 2004). In *Fields*, the attorney debt collector's collection letter merely stated that the "account balance" was $388.54 without any itemization or explanation of the amount. However, that amount included the original charges of $122.06, plus interest and

7

service charges pursuant to the original contract, as well as $250 in attorney's fees for collection of the debt, also authorized by the original contract. The Seventh Circuit found that the plaintiff in *Fields* had sufficiently stated a claim under FDCPA §§ 1692e and 1692f, and in particular for violation of § 1692e(2)(A) for falsely representing the character, amount or legal status of the debt, the same allegations made by Plaintiff in this case, and reversed the dismissal of the plaintiff's complaint. "It is not enough that the dunning letter state the amount of the debt that is due. It must state it clearly enough that the recipient is likely to understand it." *Chuway v. National Action Financial Services*, 362 F. 3d 944 (7th Cir. 2004), citing *Bartlett v. Heibl*, 128 F. 3d 497, 500-01 (7th Cir. 1997); *Terran v. Kaplan*, 109 F. 3d 1428, 1431-32 (9th Cir. 1997); *Avila v. Rubin*, 84 F. 3d 222, 226 (7th Cir. 1996); *Miller v. Payco-General American Credits, Inc.*, 943 F. 2d 482, 483-84 (4th Cir. 1991). Here Plaintiff did not understand and could not understand, how Defendants arrived at their irregular increases in the balances in their letters.

**B.   *Defendants' Letters Contained Several Other False and Misleading Representations***

Defendants' December 4, 2003 collection letter also falsely states that Norfolk has a "client" with a "new program" who has "authorized" Norfolk to settle the Providian account at a "significant discount." None of this is true. Norfolk owned the debt at the time it sent the letter and had no client. FDCPA §§ 1692e and 1692e(10) both prohibit the use of any false, deceptive or misleading representation or means in connection with the collection of any debt. These false statements are designed to make consumers believe that their opportunity to settle the matter at a lesser amount than the balance stated in the letter is limited in time and not merely a decision that Norfolk makes on its own so that they will pay faster. *Goswami v. American Collections Enterprise, Inc.*, 377 F. 3d 488 (5th Cir. 2004) (false statements that the actual creditor-client would agree to a 30% settlement only within the next 30 days violate § 1692e(10) where creditor

had authorized a 50% settlement at the time the letter was sent and a 30% settlement at any time).

Additionally, Defendants represent in their October 14 letter that their offer to settle the account for 50% of the balance stated in the letter "will only be available for a limited time." These representations are false and misleading. Defendants were still urging Plaintiff to settle the account at a "significant discount" on December 4, 51 days later, even after they had filed suit in small claims court. This is so, in spite of language in that latter letter stating that, "[t]his offer may be withdrawn if we are compelled to incur expenses in connection with the upcoming court appearance." Plaintiff will show that Defendants regularly settle accounts such as the Plaintiff's at a significant discount at any point in their collection process and even after incurring court costs because Defendants purchase the accounts at a deep discount. The standard for evaluating the deception here is that of the "least sophisticated consumer," *Clomon v. Jackson*, 988 F.2d 1314, 1318-19 (2d Cir. 1993); *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1173 (11th Cir. 1985); *Avila v. Rubin*, 84 F.3d 222 (7th Cir. 1996); *Gammon v. GC Services, LP*, 27 F.3d 1254 (7th Cir. 1994); *Martin v. Sands*, 62 F. Supp. 2d 196 (D. Mass. 1999), and Defendants' false and misleading statements here violate FDCPA §§ 1692e and 1692e(10). *Goswami, supra.*

Defendants' December 4 letter also states in bold, underlined print just above the body of the letter, "**AVOID HAVING TO APPEAR IN COURT ON January 8, 2004!!!**" This language is misleading to the least sophisticated consumer. Plaintiff will show that this language is designed to make debtors believe that Defendants will continue their small claims action against the debtors if they make a payment arrangement with Defendants. Plaintiff will show that, in fact, when such arrangements are made, Defendants do not continue the debtors' cases and, instead, obtain default judgments against the debtors.

Finally, Defendants' December 4 letter states that Norfolk "has filed suit against

9

[Plaintiff] for the $1,732.63 balance owed by you." This statement is false because the "balance" on which Defendants sued on November 24, 2003 was $1,664.70, not $1,732.63. Even adding the court costs that Defendants sought would only bring the amount sued for to $1,704.70. Thus, this representation is false and misleading.

## V. The Rooker-Feldman Doctrine Does Not Apply to Plaintiff's Claims

### A. *Plaintiff's Claims are Totally Freestanding from the State Court Lawsuit and Judgment*

Defendants' invocation of the Rooker-Feldman doctrine in this case is a red herring.[6] "The Rooker-Feldman doctrine prohibits federal district and circuit courts from reviewing state court judgments." *Sheehan v. Marr*, 207 F. 3d 35 (1st Cir. 2000). Plaintiff is not attacking or seeking review of the small claims court judgment on the debt either directly or indirectly. Norfolk sued Plaintiff for breach of contract and the issues Plaintiff seeks to assert are not related in any way to whether the contract Norfolk sued upon was breached nor the amount of Plaintiff's liability therefor. Only one of the several issues raised by Plaintiff involves numbers in any way. That issue involves the *manner* in which the balances are *disclosed* in Defendants' letters and the fact that Plaintiff *could not know* what the balances were based upon, not the fact of whether the amounts are correct or owed, the amount of the debt or the amount of the judgment. Several of the other issues she raises have nothing whatsoever to do with the balances in Defendants' letters. Nor are they related in any way with the small claims court judgment.

Defendants argue that Plaintiff's claims are "inextricably intertwined" with the small claims court judgment and that the Rooker-Feldman doctrine thus applies. "A federal claim is

---

[6] *See generally Noel v. Hall*, 341 F. 3d 1148 for a thorough, scholarly discussion of the Rooker-Feldman doctrine. In any event, Defendant Goldstone cannot argue that the Rooker-Feldman doctrine would prevent Plaintiff from asserting her claims against him for his violations of the FDCPA, as he was not a party to the small claims action,.

10

inextricably intertwined with the state-court claims 'if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." *Id., citing Hill v. Town of Conway*, 193 F. 3d 33, 39 (1st Cir. 1999). For Plaintiff to succeed on her FDCPA claims, this court need not find that the small claims judgment was wrongly decided — it is completely irrelevant to Plaintiff's claims. The small claims court decided only Plaintiff's liability on the contract creating the debt, not Defendants' conduct in collecting it, therefore this Court need not find that it was wrongly decided in order for Plaintiff to succeed on her claims.

The cases cited by Defendants involve either claims that required a determination that the state court judgment was erroneous or void, or required the state court judgment to exist, such as injuries allegedly inflicted by the state court judgments or actions in the conduct of the state court litigation, circumstances that are not present in the instant case. The small claims court judgment does not have to exist in order for Plaintiff's FDCPA claims to arise, as they arose prior to the judgment. Nor does she challenge any aspect of that judgment or the amount of the debt itself.

Plaintiff's claims arose *prior* to the small claims court judgment date, when she received Defendants' deceptive disclosures. They did not arise from the same transaction or occurrence adjudicated by the small claims court, the contract creating the debt and its breach. They arose, rather, from Defendants' deceptive collection attempts, long after the contract and its breach had occurred. Plaintiff's claims are totally freestanding from the state court lawsuit and judgment and unrelated to the merits or amount of the debt. Thus, none of these issues can be "inextricably intertwined" with the state small claims court judgment.

Directly on point here is the Seventh Circuit's decision in *Long v. Shorebank Development Corp., supra*. In that case, the plaintiff sought damages for, among other claims, violations of the FDCPA resulting from the defendants' actions in obtaining an eviction order

11

against her in the state court. The plaintiff in *Long* alleged that the defendants had violated FDCPA § 1692e(2)(A) and § 1692f, both alleged by Plaintiff in this case, by presenting her with a notice and serving her with a complaint stating that she owed Shorebank money, which defendants knew to be untrue.

> The Rooker-Feldman doctrine asks: is the federal plaintiff seeking to set aside a state court judgment, or does he present some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party.

*Id., citing GASH Assocs. v. Village of Rosemont*, 995 F. 2d 726, 728 (7th Cir. 1993). The Seventh Circuit in *Long* found that:

> the propriety of the [state court] judgment is not directly at issue with respect to the violations of the FDCPA Long asserts" because they were "independent of and complete prior to the entry of the eviction order. It makes no difference that Long may also deny the correctness of the eviction order in pursuing these claims."

*Id.* Plaintiff's FDCPA claims here are independent of the small claims court judgment and were complete prior to entry of it, as in *Long*.

This holding in *Long* was cited approvingly by the First Circuit in *Sheehan, supra,* in determining that Rooker-Feldman did not apply even though there was "some overlap" of Sheehan's Americans with Disabilities Act claim and the state court's involuntary retirement determination:

> Rooker-Feldman doctrine precludes consideration only of federal claim alleging injury caused by state court judgment, not of federal claim alleging prior injury that state court failed to remedy.

*Id.*

The Plaintiff here similarly asserts FDCPA claims for violations of §§ 1692e(2)(A) and 1692f for Defendants' sending her collection letters with un-itemized balances which she could not understand. Plaintiff asserts additional claims, discussed, *supra*, that Defendants have violated the FDCPA through the other false and misleading representations in their letters,

entirely unconnected with the balances therein.

**B.    *Plaintiff Was Not Obligated to Bring Her Claims in the State Court Action***

None of Defendants' authority supports applying the Rooker-Feldman doctrine to prevent a party from bringing a claim in federal court, completely unrelated to the claim on which a state court judgment is based, because the party did not assert that unrelated claim in the state court proceeding as a counterclaim. Plaintiff's FDCPA claims were not compulsory counterclaims in a state court action for breach of contract to collect a debt. *Peterson v. United Accounts, Inc.*, 638 F. 2d 1134 (8th Cir. 1981).[7] *Accord Whitaker v. Ameritech Corp.*, (7th Cir. 1997) (FDCPA claim not barred because it arose out of a different set of facts involving the collection of the debt; "[d]ebt attachment and debt collection are matters separated by time and purpose"); *Egge v. Healthspan Serv. Co.*, 115 F. Supp. 2d 1126 (D. Minn. 2000) (FDCPA claim not mandatory counterclaim in state court and did not arise from the underlying debt, but from a different transaction, its collection); *Walton v. Franklin Collection Agency, Inc.*, 1999 U.S. Dist. LEXIS 7523 (N.D. Miss. 1999) (FDCPA claims were unrelated to whether consumers owed the debt and not barred by either claim preclusion or issue preclusion after state court collection action); *Zhang v. Haven-Scott Associates, Inc.*, 1996 WL355344 (E.D. Pa. 1996) (FDCPA claim did not challenge the validity of the debt, but rather attacked the methods by which defendants attempted to collect it and was not barred by res judicata).

In *Peterson, supra,* the Eighth Circuit, in holding that the FDCPA claim was permissive, rather than mandatory, in a previous state court collection action, found that "the circumstances giving rise to the original debt are separate and distinct from the collection activities undertaken .

---

[7]    The relevant portions of Massachusetts's rule on compulsory counterclaims, Mass. R. Civ. P. 13(a), are identical to those of North Dakota at issue in *Peterson, supra* and Fed. R. Civ. P. 13(a). Both provide that a counterclaim is compulsory where it "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim. . . ."

13

. . ." and that "the suit on the debt brought in state court is not logically related to the federal action initiated to enforce federal policy regulating the practices for the collection of such debts." *Id.*

Plaintiff's claims for Defendants' actions and deception in collecting the debt thus do not arise from the same transaction or occurrence as Defendants' breach of contract claim in the small claims court. In addition, the rules of the Massachusetts Small Claims Court *explicitly* provide that there are no compulsory counterclaims *at all* in small claims court proceedings, the venue Defendants chose for instituting their suit on the contract. Mass. Uniform Small Claims Rule 3(c). Defendants' position would do nothing less than turn permissive counterclaims into compulsory counterclaims. This is not the law. Not only is it not the law, but it contravenes the policy behind the Massachusetts small claims court rules, "to secure the just, speedy and inexpensive determination of every small claims action" through "the simple and informal adjudication of the controversy." *Id.* Rules 1 and 7(c).[8] Defendants would require Plaintiff to bring her federal FDCPA claims in small claims court, when she might choose a different forum for their adjudication, as is her right. This "would in many cases effectively preclude federal jurisdiction." *Peterson, supra.*

In addition, Plaintiff could not have brought her FDCPA claims against Defendant Goldstone. The small claims action was brought by Norfolk and Goldstone was not a party to the suit. *Cf. Maldonado v. Harris*, 370 F. 3d 945 (9th Cir. 2004). He was not even present on the

---

[8] Massachusetts Small Claims Court is governed by the Massachusetts Uniform Small Claims Rules, and the other civil rules of court are not applicable. *Id.* The rules of the small claims court embody a relaxed, more informal procedure in which a written answer is not necessary, discovery is not allowed except upon good cause shown and is not generally available, the participation by attorneys may be limited, the decision-makers are not judges, but clerk-magistrates who are not required to be lawyers, and settlements "should be encouraged." *Id.* Rules 3(b), 5 and 7(c); Massachusetts Small Claims Standards 5:00, 5:03 and 6:05.

trial date; Norfolk was represented by another attorney.

## VI. Plaintiff's Claims Are Not Barred by Defendants' Preclusion Theories

Defendants' arguments for application of various preclusion defenses are even more imprecise than their arguments for application of the Rooker-Feldman doctrine. Defendants invoke judicial estoppel and, apparently, both claim preclusion (res judicata) and issue preclusion (collateral estoppel), as they do not distinguish between them. Defendants bear the burden of proof for each of these affirmative defenses. In deciding these issues, the court must look to the law of Massachusetts. *Perez-Guzman v. Gracia*, 346 F. 3d 229 (1st Cir. 2003), citing *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 466, 102 S. Ct. 1883 (1982).

### A. *Plaintiff's Claims Are Not Barred by Either Claim or Issue Preclusion*

Claim and issue preclusion are separate and distinct affirmative defenses, each requiring proof of specific elements. Yet Defendants' vague discussion of these defenses without mention of their required elements demonstrates how baseless they are and illustrates Defendants' inability to carry their burden of proof on these affirmative defenses. To apply claim preclusion (merger or bar, res judicata), a defendant must prove: (1) the identity or privity of the parties to the present and prior actions; (2) a valid, final judgment on the merits; and (3) that the matter was or should have been adjudicated in the prior action. *Bagley v. Moxley*, 407 Mass. 633, 555 N.E. 2d 229 (1990).

All three elements are lacking here. There has been no valid, final judgment on the merits of Plaintiffs' FDCPA claims, as they were not presented in the small claims court action. The only issue adjudicated by the agreed judgment settling the small claims case was Plaintiff's liability to Defendants on the contract. Nor are Plaintiffs' FDCPA claims matters that "should have been adjudicated" in the small claims court case.

As discussed, *supra*, no counterclaims are compulsory in small claims court. To hold that Plaintiff's FDCPA claims are barred by claim preclusion in this case would be to make her permissive counterclaims compulsory. Not only are they permissive by the rules of small claims court, but they would otherwise be permissive because they bear no relationship to Defendants' claims and do not arise from the same transaction or occurrence as Defendants' action on the contract in small claims court. Defendants chose small claims court as their forum for suit upon their contract action against Plaintiff. They cannot now try to change the rules of that forum (and the Massachusetts Rules of Civil Procedure) after the fact to use as a shield for their misleading and deceptive acts. Finally, while both Plaintiff and Defendant Norfolk were parties to the small claims action Defendant Goldstone was not and does not have standing to assert this affirmative defense.

"[I]ssue preclusion prevents relitigation of an issue determined in an earlier action when the same issue arises in a later action, based on a different claim, between the same parties . . . , and the determination was essential to the decision in the earlier action." *Day v. Kerkorian*, 61 Mass. App. Ct. 804, 814 N.E. 2d 745 (2004), *quoting Salem v. Massachusetts Commn. Against Discrimination*, 44 Mass. App. Ct. 627, 639, 693 N.E. 2d 1026 (1998). In order for issue preclusion (collateral estoppel) to apply, Defendants must prove three elements: (1) the identity or privity of the parties to the present and prior actions; (2) an issue that was actually litigated; and (3) a determination on the merits of the issue was essential to a prior valid and final judgment. *Jarosz v. Palmer*, 436 Mass. 526, 766 N.E. 2d 482 (2002); *Heacock v. Heacock*, 402 Mass. 21, 520 N.E. 2d 151 (1988); *TLT Construction Corp. v. Anthony Tappe and Assoc., Inc.*, 48 Mass. App. Ct. 1,4 (1999). Where an issue has not been adjudicated, issue preclusion is not available. *Day, supra*; *Mongeau v. Boutelle*, 10 Mass. App. Ct. 246, 407 N.E. 2d 352 (1980).

Just as with claim preclusion, Defendants cannot meet their burden of proof that issue preclusion applies. None of the elements are satisfied here either. The issues involved in Plaintiff's FDCPA claims were not actually litigated in the small claims case. "The appropriate question is whether the issue was 'subject to an adversary presentation and consequent judgment' that was not the product of the parties' consent." *Jarosz, supra, quoting Keystone Shipping Co. v. New England Power Co.*, 109 F. 3d 46, 52 (1st Cir. 1997).

In the small claims court action, no issues, let alone those involved in Plaintiff's FDCPA claims, were subject to an adversary presentation. Plaintiff did not answer Defendants' complaint, she did not file any counterclaim and there was no trial or adversary presentation. Additionally, the judgment was the product of the parties' consent. The third element is not even reached; since Plaintiff's FDCPA claims were not subject to an adversary presentation, and therefore not "actually litigated," there was no determination on the merits of those claims that could be essential to the small claims court judgment. As discussed, *supra*, Defendant Goldstone, not a party to the small claims court, does not have standing to assert this affirmative defense either.

*Brady v. Nynex Information Resources Co.*, 1997 WL 177605; 1997 Mass. Super. LEXIS 438 (Worc. Sup. April 8, 1997), a Massachusetts trial court decision cited by Defendants for the proposition that Plaintiff's FDCPA claims are barred, presumably because she did not raise them as counterclaims in the small claims court action holds no such thing. In *Brady*, on Nynex's motion to dismiss, the court determined that Brady's claims, that Nynex exerted undue influence in the *formation* of the contract upon which Nynex had previously sued Brady (not at issue here), were compulsory counterclaims because they arose out of the same contract between the parties. The plaintiff in *Brady* also sued the creditor's debt collector for violations of the FDCPA. The

17

debt collector did not bring a motion to dismiss, and the *Brady* court did not make any determination as to that claim.

**B.     *Judicial Estoppel Has No Application to Plaintiff's Claims***

Judicial estoppel, the third affirmative defense Defendants assert, has absolutely no application to this case and Defendants have not and cannot show that it does. "Judicial estoppel is an equitable doctrine that precludes a party from asserting a position in one legal proceeding that is contrary to a position it had previously asserted in another proceeding. *Blanchette v. Blanchette*, 427 Mass. 176, 692 N.E. 2d 21 (1998). Although the requirements for judicial estoppel, unlike issue and claim preclusion, have not been precisely defined, the party seeking to preclude its opponent's claim must show that the opponent is taking an inconsistent position relative to the same subject for judicial estoppel to apply. *Id.*  A party will be estopped from further pursuing its claim if the party seeks to "use the judicial process in an inconsistent way that the court should not tolerate." *Fay v. Fed. Nat'l Mortgage Ass'n*, 419 Mass. 782, 783, 647 N.E. 2d 422 (1995). Thus, where a party asserts position A in one case and position B later, where A and B are inconsistent, the party is estopped.

In the instant case, Plaintiff did not assert any position in the small claims court, much less one inconsistent with the FDCPA claims she now brings in this case. There was no trial, Plaintiff did not file an answer or counterclaim – she merely settled the small claims action with Norfolk. Defendants' argument appears to be that if a party fails to take position A in prior litigation, when the party takes position A in a later case, position A is now inconsistent with the party's failure to take position A in the first case. This is absurd and there is absolutely no support for application of judicial estoppel to this case.  Moreover, Defendants here also would turn Plaintiff's permissive counterclaims into compulsory ones. Finally, Plaintiff's FDCPA

18

claims which have nothing to do with the subject of the small claims action or judgment, are not inconsistent with any position Plaintiff has ever taken (or not taken).

### VII. Plaintiff Has Alleged Sufficient Facts for Individual Liability by Goldstone

It is disingenuous for Defendant Goldstone to argue that he has no individual liability for the FDCPA violations contained in Defendants' letters. Plaintiff claims that the dunning letters sent by Defendants contained false and misleading statements about a number of things and that their presentation of the balances was confusing and inadequate in violation of the FDCPA. Both the October 14 and 21 letters contained Defendant Goldstone's name on the signature line.[9] This is *prima facie* evidence of his personal participation in sending the letters. To the extent that Goldstone might now assert that he did not authorize his name to be on the letters, Plaintiff would need the opportunity for discovery to determine the facts.[10]

Individual debt collectors, including employees, are jointly and severally liable for their own violations of the FDCPA. FDCPA § 1692 provides that, ". . . any debt collector who fails to comply with any provision of this sub-chapter with respect to any person is liable to such person. . . ." *See e.g. West v. Costen*, 558 F. Supp. 564 (W.D. Va. 1983); FTC Official Staff Commentary § 803(6)-1; FTC Informal Staff Letters: Nants (April 12, 1988), Rubin (June 15, 1979), Richardson (June 14, 1978, Dean (May 30, 1978, Bachrach (Nov. 16, 1977). Moreover, Plaintiff will show after discovery that Defendant Goldstone determined and implemented Norfolk's policies and procedures, including those that gave rise to Plaintiff's claim.

---

[9] The September 3 letter was also from Defendant Goldstone, however Plaintiff does not assert any of the FDCPA violations contained in that letter because they would be barred by the statute of limitations. *See infra.*

[10] The bases for Goldstone's assertions that there is no basis for personal liability are unclear. He does not argue that he is not a debt collector under that definition in FDCPA § 1692a(6). Were he to do so, Plaintiff would need to do discovery on this issue.