## VIII. Plaintiff Asserts No Claims for Violations Contained in the September 3 Letter

Plaintiff does not assert any of the FDCPA violations contained in the Defendants' September 3, 2003 letter, as they would be barred by the one year statute of limitations. Plaintiff has included that letter and her allegations concerning it as evidence of the claims she asserts, as a context for the FDCPA violations contained in the other three letters, and to enable the Court to see the running balances in those letters as calculated by Defendants. Moreover, Defendants' additional violations of the FDCPA other than those sued upon may be relevant to a determination of the amount of statutory damages to which Plaintiff is entitled for Defendants' violations.

## REQUEST FOR ORAL ARGUMENT

Plaintiff believes that oral argument may assist the Court and wishes to be heard on Defendants' motion.

## CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendants' Motion to Dismiss or, Alternatively, for Summary Judgment.

Respectfully submitted,
Attorney for the Plaintiff

_____
Yvonne W. Rosmarin  BBO #566428
Law Office of Yvonne W. Rosmarin
58 Medford Street
Arlington, MA 02474
781-648-4040



**BUREAU OF
CONSUMER PROTECTION**

UNITED STATES OF AMERICA
**FEDERAL TRADE COMMISSION**
WASHINGTON, D C 20580

April 12, 1988

Bruce A. Nants, Esquire
13 South Magnolia Avenue
P.O. Box 547871
Orlando, Florida 332854

Dear Mr. Nants:

This is in reference to your April 1, 1988, correspondence to the Federal Trade Commission's Office of General Counsel concerning the application of the Fair Debt Collection Practices Act (the "Act"), 15 U.S.C. §1692 et seq., to attorneys.[1] It is our understanding, based on your telephone conversations with Lawrence DeMille Wagman of that office, that you desire our informal views on the eleven questions posed in your correspondence.

Accordingly, pursuant to your request, I am treating your correspondence as a request for an informal staff interpretation. In this regards and as you have been previously advised, we generally refrain, as a matter of policy, from issuing opinions on matters in private litigation. In this connection, we also note that the opinions expressed in this letter, and in prior staff interpretations previously sent to you, are those of the Commission's staff and as such are not binding on the Commission or any court. However, inasmuch as the questions you raise have been, in most instances, previously addressed by us, we are willing to accommodate your request. Further, because our prior staff interpretations discuss in greater detail the issues raised in your letter, we are responding summarily to the questions you posed.

Questions A, B, C, D and H

These questions pertain to Section 803 (6) of the Act, 15 U.S.C. §1692a (6), defining the term "debt collector." It is our opinion that generally, to come within the definition of a debt

---

[1] As you are aware, on July 9, 1986, Congress amended the Act by repealing former Section 803 (6) (F), which had exempted from the definition of debt collector "any attorney-at-law collecting a debt as an attorney on behalf of and in the name of a client." Thus, as amended, the Act covers attorneys who regularly collect or attempt to collect debts owed or due or asserted to be owed or due another.

Case 1:04-cv-12134-DPW    Document 13-2    Filed 12/23/2004    Page 3 of 13

collector, an attorney must perform some tasks that are functionally indistinguishable from those traditionally performed by debt collection agencies.[2] Traditional debt collection activities intended to be covered by the Act include, for example, locating the debtor when necessary, communicating with him about the amount owed, and negotiating repayment arrangements.

The Act does not define the level of activity that will constitute collecting debts "regularly." Factors such as the frequency of such collection work may be considered, on a case-by-case basis, in determining if an attorney "regularly" collects debts owed to others. The percentage of a law practice that is devoted to collection work may be less significant than whether debt activities are an established part of the practice. On the other hand, when the number of collection efforts engaged in is _de minimis_, Congress has made clear that the Act does not apply.

Consistent with the history and purposes of the Act, we have interpreted the term "debt collector" to encompass both natural persons and artificial persons, _i.e._, business organizations. When lawyers practice together under a common name, the individuals who comprise such a firm and their employees would be required to comply with the requirements of the Act to the extent that the Act applied to their business activities.[3] In our view, the relevant inquiry is whether the firm regularly collects debts for others.

Question E

Prior to the 1986 amendment to the Act, the Commission issued a statement clarifying its enforcement policy regarding traditional debt collection agencies which happen to be owned or operated by an attorney.[4] The Commission also published a

---

[2] _See_ letters dated December 10, 1986, January 8, 1987, January 9, 1987, January 20, 1987, and January 21, 1987, to David S. Miller, Francis A. Polito, Jonathan P. Barstow, Daniel W. Dreyfuss and James D. Broadway, respectively.

[3] _E.g._, Broadway staff letter; Proposed Official Staff Commentary on the Fair Debt Collection Practices Act, 51 Fed. Reg. 8019, 8022 (March 7, 1986).

[4] "Commission Statement on the Fair Debt Collection Practices Act" issued in connection with _U.S. v. Shaffner_, 626 F.2d 32 (7th Cir. 1980), _consent judgment entered_, No. 83C3130 (N.D. Ill. June 23, 1983). _See also_, _XYZ Law Firm v. FTC_, 525 F. Supp. 1235 (N.D. Ga. 1981).

2

proposed version of a staff commentary on the Act.[5] The commentary summarizes over 1,000 pages of informal staff interpretations that Commission staff had issued since the Act went into effect in 1978.

Question F

A civil penalty of up to $10,000 for each violation of the Act is authorized.[6] Among the factors to consider in determining the amount of a civil penalty are: the good or bad faith of the defendant; its ability to pay; and the necessity of vindicating the authority of the Federal Trade Commission in deterring further violations.

Question G

The Federal Trade Commission does not have jurisdiction over banking institutions. Responsibility for their regulation lies with the federal regulatory agencies identified in Section 814 (b) of the Act, 15 U.S.C. §1692l (b).

Question I

The Commission staff selects matters for further investigation when complaints from consumers, state and local agencies, or from industry members suggest a pattern of law violations not suited to voluntary compliance efforts. Case selection is based primarily on the extent of possible consumer injury. In appropriate instances we initiate non-public formal investigations of debt collectors to determine whether they are or have engaged in serious violations of the Act.

When further investigation produces evidence confirming such violations, the staff will attempt to negotiate a settlement of the case prior to recommending the issuance of a complaint, provided there is a likelihood that appropriate civil penalties and other affirmative relief can be obtained. When a negotiated settlement that effectively addresses the violations at issue cannot be reached, however, the Commission, through the Department of Justice, may bring suit to enforce the law. In

---

[5] Commentary, supra note 3. The commentary is currently being revised to reflect the public comment received and the 1986 amendment.

[6] Section 5 (m) (1) (a) of the Federal Trade Commission Act, 15 U.S.C. §45 (M) (1) (a); Section 814 (a) of the Act, 15 U.S.C. §1692l.

3

light of the foregoing and in the absence of sufficient facts to make a determination, the Commission's staff is unable to formulate a response to the latter part of this question.

Question J

See court decisions cited in response to Question E above.

Question K

In our view, if an attorney is a debt collector and "communicates," as that term is defined in the Act, with a consumer, the debt validation and notice requirement in Section 809 (a), 15 U.S.C. §1692g, applies.[7] The notice must be provided within five days of the collector's initial "communication" with the consumer. Although a collector may include the notice in his initial "communication" with the consumer, there is no requirement that he do so.

The foregoing views represent the staff's present enforcement position. As previously indicated, they are not binding on the Commission or upon a court.

Sincerely,

*Rachelle V. Browne*

Rachelle V. Browne
Attorney
Division of Credit Practices

Enclosures

cc: Larry DeMille Wagman, Esquire
    Office of General Counsel

---

[7] See letters dated September 12, 1986, November 17, 1986, and February 6, 1987, to Sheldon H. Pressler, Deborah M. McPhee and Paul A. Peters, respectively.

4

v III

**FEDERAL TRADE COMMISSION**
WASHINGTON, D. C. 20580

BUREAU OF
CONSUMER PROTECTION

June 15, 1979

Richard J. Rubin, Esquire
Attorney at Law
Northern New Mexico Legal
  Services, Inc.
926 Hickox Street
Santa Fe, New Mexico  87501

Dear Mr. Rubin:

This is in response to your letter dated June 6, 1979 requesting staff interpretations of the Fair Debt Collection Practices Act ("Act"). You inquire whether employees of a collection agency as well as the collection agency itself would be a "debt collector" as that term is defined under the Act, when collecting on debts owed a creditor residing in a state other than the state in which the consumer resides. Presumably, the collection agency is situated in the state in which the consumer resides. You also inquire as to whether the personnel of the collection agency would be required to identify the name of the collection agency when communicating with consumers.

There is enclosed a copy of our interpretive letter dated November 19, 1977 (Interpretives, Volume I, p. 89) which we feel answers your first question. In that interpretive, we stated our view that employees of a debt collection agency engaged in debt collection practices are "debt collectors" under the Act, and, together with the collection agency, would be subject to the civil liability provisions of Section 813.

With respect to your second question we have previously expressed a view that a telephone call to a third party without proper identification would violate Section 806(6). Violation of that section would, in our opinion, occur as well in a situation in which the communication was made to the consumer without identifying the collection agency.

The comments provided represents the informal views of the staff and as such, are not binding on the Commission.

Sincerely,

*Alan D. Reffkin*

Alan D. Reffkin
Attorney
Division of Credit Practices

Enclosure

**FEDERAL TRADE COMMISSION**
WASHINGTON, D. C. 20580

BUREAU OF
CONSUMER PROTECTION

June 14, 1978

Edmund F. Richardson, Esquire
Robbins, Green, O'Grady
  & Abbuhl
1900 Valley Bank Center
Phoenix, Arizona  85073

Dear Mr. Richardson:

This is in response to your letter dated March 31, 1978 concerning your request for a determination whether your client and its employees are debt collectors pursuant to the provisions of the Fair Debt Collection Practices Act.  You state that your client is an independent service company not affiliated with the savings and loan institution to which it is under contract to solicit accounts, principally mobile home and property improvement dealers, to whom the savings and loan may wish to furnish inventory financing and from whom the savings and loan may wish to purchase chattel paper.

It appears from your letter that the contract in question provides that the service company is also a guarantor of consumer obligations and upon default, may be required to pay off the contracts, presumably taking over the rights in the property which is security for the loans.

You have indicated in a general way the responsibilities of the employees of the service company towards customers of the mobile home and property improvement dealers. However, Section 803(6)(G)(iii) contemplates a situation in which a bona fide servicing arrangement is entered into between the creditor and a company prior to the time the debt goes into default.  The situation is best illustrated in the case involving a mortgage servicing agreement between two banks, whereby the originating mortgagee bank forwards the accounts to another bank pursuant to an agreement for servicing.  The forwarded accounts are not in default when received.

20

Edmund F. Richardson, Esquire                                           - 2 -

Since your client does not qualify as a service company as contemplated by the statute, the exclusion does not apply. Accordingly, your client would be a 'debt collector' under Section 803(6) of the Act. Additionally, when the account goes into default and the savings and loan requires your client to pay off the contract, your client becomes a debt collector under the Act since it then engages in the collection of debts as that practice is understood under Section 803(6) of the Act. Furthermore, since your client engages in self-help or employs judicial means to obtain the collateral it would probably qualify as a debt collector under Section 803(6) for purposes of Section 803(6). Under that proviso, the term debt collector includes any person "... in any business the _principal purpose_ of which is the enforcement of security interests."

A further question arises with regard to employees of your client representing themselves to be agents of the savings and loan particularly when such calls are made to consumers who are delinquent. Since the employees may not be agents of the savings and loan, any statement to that effect may be a misrepresentation. Clearly, such employees would not be employees of the savings and loan since they represent an independent company. This fact should be pointed out to consumers during any communication.

We do not read Section 803(6) as narrowly as you do with respect to the meaning of the word "person". Our reading of the Act favors a broad interpretation of the term "debt collector". That reasoning is supported by the legislative history of the Act as well as by the fact that subsection (6) exempts certain classes of persons from the definition. The legislative history clearly reveals Congress' intent to cover all third persons who regularly collect debts for or on behalf of others as well as those who are engaged in any business the principal purpose of which is the collection of debts. We believe that Section 803(6) can be interpreted to include not only corporations, partnerships or proprietorships that act as independent debt collectors but also the individual employees hired by any debt collection agency.

We see no difficulty in requiring either the service company or its employees to comply with the provisions of the Act. Certainly there can be no misrepresentation if your client provides the notice required under Section 809 and the employees identify themselves in any communication with the

21

Edmund F. Richardson, Esquire                                    - 3 -

consumer or any other person when such communication concerns
the debt of the consumer. In this further respect we would
expect the employees of any agency to refrain from engaging
in any activity proscribed by the Act.

The views afforded herein are informal in nature and represent
the staff's present enforcement position. They do not
necessarily represent the views of the Commission.
Accordingly, the views expressed are not binding on the
Commission.

                              Sincerely,

                              *Alan D. Reffkin*
                              Alan D. Reffkin
                              Attorney
                              Division of Credit Practices

FEDERAL TRADE COMMISSION
WASHINGTON, D. C. 20580

BUREAU OF
CONSUMER PROTECTION

May 30, 1978

Robert C. Dean, Esquire
Miller, Dean & Cordell
338 May Building
Greenville, Mississippi 38701

Dear Mr. Dean:

This is in response to your letter dated April 20, 1978 inquiring whether employees of your client, a debt collector under the provisions of the Fair Debt Collection Practices Act, are individually liable in connection with activities involving repossession of personal property. You further inquire whether such employees are responsible for providing the notice required to be provided to the consumer under Section 809 of the Act and, whether such employees must satisfy the requirements of Sections 804 and 805 of the Act.

An additional question concerns Section 806(3) of the Act and whether your client can provide merchants with a list of names of people who have "reputations for passing bad checks."

The staff has previously issued an opinion that employees of a debt collector are covered under the Act and are liable to the same extent as their employers would be liable. Accordingly, employees of debt collectors must refrain from violating the provisions of the Act including Sections 804 and 805. The notification requirements under Section 809 of the Act, if previously met by the employer, would not have to be satisfied a second time by the employer's employees in connection with their collection efforts with respect to the same debt.

With regard to your inquiry concerning Section 806(3), that section prohibits publication of a list of consumers who allegedly refuse to pay debts except to a consumer reporting agency under Section 603(f) of the Fair Credit Reporting Act, or to persons with a legitimate business need as provided under Section 604(3) of that Act. The furnishing by a debt collector of a list of the names of consumers, who allegedly refuse to pay their debts, to creditor members of the community probably would violate Section 806(3) of the Act, and if your client trades such a list

31

Robert C. Dean, Esquire                                                    - 2 -

for lists compiled by others for the purpose of forming a data bank, such purpose would clearly violate Section 806(3).

With respect to supplying a general list of the names of people who have "reputations for passing bad checks" without regard to your client's collection efforts concerning such people, the provisions of the Fair Credit Reporting Act would be applicable and we would advise you to resort to that statute before your client engages in any such undertaking.

The views expressed herein represent the staff's present enforcement position. These views are informal in nature and accordingly are not binding on the Commission.

          Very truly yours,

          *Alan D. Reffkin*

          Alan D. Reffkin
          Attorney
          Division of Credit Practices

FEDERAL TRADE COMMISSION
WASHINGTON, D.C. 20580

BUREAU OF
CONSUMER PROTECTION

00083

Eve E. Bachrach, Esquire,
Stein, Mitchell & Mezines,
1800 M Street, Northwest,
Washington, D. C. 20036

NOV 16 1977

11-16-77

Dear Ms. Bachrach:

    This is in response to your letter dated November 4, 1977 inquiring whether under the recently enacted Fair Debt Collection Practices Act, individual debt collectors working for a collection agency would be liable for their violations of the Act.

    Your inquiry was prompted by a comparison of subsections (3) and (6) of Section 803 of the Act. Subsection (3) defines a consumer as "any natural person" whereas subsection (6) defines the term "debt collector" as "any person". You point out that subsection (6) exempts certain classes of persons from the definition of "debt collector" thereby supporting a broad interpretation of that term. However, you question whether the failure of Congress to provide specifically for "natural persons" within the definition of "debt collector", in effect, excludes that class of persons from coverage.

    Our reading of the Act favors a broad interpretation of the term "debt collector" since Congress expressed an intent to cover all third persons who regularly collect debts for or on behalf of others. We believe that Section 803(6) can be interpreted to include not only corporations, partnerships or proprietorships that act as independent debt collectors but also the individual employees hired by any business, the principal purpose of which is the collection of debts. This position is supported throughout Section 803(6) particularly in the language used to exclude certain individuals from coverage. Thus, in Section 803(6)(A), an "employee" of a creditor who collects debts for or in the name of the creditor is specifically excluded by the definition of "debt collector". Similarly, in Section 803(6)(C) an "employee" of the United States or any State is excluded from the Act's provisions while that person is attempting

Eve E. Bachrach, Esquire.           00090    - 2 -

to collect any debt in the performance of official duties. Inasmuch as Congress took special effort in subsection (6) to exclude, in special situations, certain classes of persons, it is reasonable to assume that its failure to specifically exclude others who would ordinarily fall within the meaning of the term "any person", was intentional.

The specific use of the words "natural person" to define "consumer" in Section 803(3) of the Act, in our opinion, was intended to exclude from the protections of the Act artificial persons such as corporations or other entities created by statute. However, we find nothing in the legislative history of the Act which would permit us to limit subsection (6) by reason of the specific reference to "natural person" in subsection (3). Nor do we find this to be contrary to the traditionally accepted rules of statutory construction. On the contrary, it is our opinion that both the purpose of the legislation and the language of the Act supports the position that subsection (6) includes natural persons who might be employees of a collection agency, as well as the agencies themselves.

The above comments constitute informal staff opinion which is advisory in nature and in no way binding upon the Commission.

Sincerely,

Alan D. Reffkin,
Attorney,
Division of Special Statutes.