IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LINDA FLINT EDGE,            ) | |
|     Plaintiff,            ) | |
|                                ) | |
| v.                              ) | No.   04-12134  DPW |
|                                ) | |
| NORFOLK FINANCIAL CORPORATION  ) | |
| and DANIEL W. GOLDSTONE,        ) | |
|     Defendants.           ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF
HER PETITION FOR ATTORNEY'S FEES**

Plaintiff Linda Flint Edge submits this Memorandum of Law in Support of her petition for an award of attorney's fees.

**I.    FACTS**

I.    Plaintiff initiated this suit for Defendants' violations of the Fair Debt Collection Practices Act (FDCPA) by filing a complaint with the court on October 8, 2004. In response, Defendants filed a Motion to Dismiss, or Alternatively, for Summary Judgment (hereafter "motion to dismiss"), which was fully briefed and which this Court denied on May 4, 2005. After denial of Defendants' motion to dismiss, the Court set a short discovery schedule, with discovery to be completed by August 5, 2005.

After the hearing, counsel for Defendants informed Plaintiff's counsel that he would be busy with trials beginning in June and both counsel discussed the importance of taking Defendants' depositions as soon as possible. Plaintiff's counsel therefore on May 6 began preparing a list of areas of inquiry for and documents to be produced at a Fed. R. Civ. P. 30(b)(6) deposition of Defendant Norfolk Financial Corporation ("Norfolk"), as well as comprehensive written discovery to each defendant so that Plaintiff could receive their responses and document production prior to the

anticipated depositions.[1]  Because the discovery rules allow Defendants 30 days to respond to written discovery and require 30 days prior notice for production of documents at Defendants' depositions, Fed. R. Civ. P. 30(b)(5), this discovery work was necessary in order to obtain Defendants' depositions as soon as possible within the short discovery period, due to Defendants' counsel's trial schedule.

On May 10, 2005, after Plaintiff's counsel had essentially completed drafting Plaintiff's discovery, Defendants tendered an offer of judgment, pursuant to Rule 68 of the Federal Rules of Civil Procedure in the amount of $1,000.00 (inclusive of interest and costs) plus reasonable attorney's fees to be determined by this Court.  On May 17, 2005, Plaintiff accepted Defendants' Rule 68 Offer of Judgment, by filing an acceptance with the court.[2]  On May 18, 2005, judgment was entered against both Defendants. Plaintiff now moves the court for an award of attorney's fees, pursuant to 15 U.S.C. §1692k.

## II.    Plaintiff is Entitled to an Award of Attorney's Fees

Defendants' Offer of Judgment specifically offered and Plaintiff accepted judgment for reasonable attorney's fees to be determined by the Court.  Thereafter, a judgment was entered on May

---

[1]      Plaintiff's counsel determined that a Fed. R. Civ. P. 30(b)(6) deposition of Norfolk would be necessary, possibly followed by the individual deposition of Defendant Daniel Goldstone ("Goldstone"), if necessary. This assessment was based on counsel's attendance at a past individual deposition of Goldstone in another case, *Martin, et al. v. Sands, et al.*, 62 F. Supp. 2d 196 (D. Mass. 1999) and her recent review of the transcript of that deposition (not included in time records submitted herein). In Plaintiff's counsel's opinion, Goldstone's responses in that deposition to questions regarding operation of his collection law firm, of which he was the sole owner, were often vague, equivocal or evasive. In fact, to several of these questions Goldstone responded that he did not remember. In order to prevent such responses in this case, Plaintiff's counsel needed to prepare a very specific, thorough list of areas of inquiry and documents to be produced at Norfolk's Rule 30(b)(6) deposition, as well as several very specific, thorough interrogatories and document requests to precede the deposition.  *See also* note 3, *infra*.

[2]      Defendants' offer of judgment for $1,000.00 in damages included costs. The maximum statutory damages available under the FDCPA is $1,000.00.  Plaintiff's only taxable cost here is her $150.00 filing fee. Given these circumstances, Plaintiff believed it was reasonable to accept Defendants' offer rather than continuing to litigate for an additional $150.

2

18, 2005, against both Defendants on Plaintiff's complaint. Plaintiff's lawsuit, therefore, was successful and Plaintiff is thereby the prevailing party and entitled to an award of her attorney's fees, both by law and by agreement.

In addition to Defendants' inclusion of reasonable attorney's fees in their accepted offer of judgment, the FDCPA's authorization for the payment of attorney's fees to a successful consumer is mandatory, not discretionary. 15 U.S.C. §1692k(a)(3); *Zagorski v. Midwest Billing Services, Inc.*, 128 F.3d 1164 (7th Cir. 1997); *Tolentino v. Friedman*, 46 F.3d 645 (7th Cir. 1995); *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 28 (2d Cir. 1989); *Mace v. Van Ru Credit*, 109 F.3d 338, 344 N.3 (7th Cir. 1997); *Graziano v. Harrison*, 950 F.2d 107, 113-14 (3rd Cir. 1991); *cf. DeJesus v. Banco Popular de Puerto Rico*, 918 F.2d 232 (1st Cir. 1990) (Truth in Lending Act case) *(DeJesus* I). The purpose of this fee shifting provision is to attract competent counsel. *Zagorski*, 128 F.3d at 1167; *Tolentino*, 46 F.3d at 652; *see also Gusman v. Unisys Corp.*, 986 F.2d 1146, 1150 (7th Cir. 1993).

An award of attorney's fees to a successful consumer under the FDCPA is designed to promote Congress's intent to compensate the consumer for his role in privately enforcing the FDCPA. *Tolentino v. Friedman*, 46 F.3d at 651; *see also*, *DeJesus* I, *supra*.

> Given the structure of the section, attorney's fees should not be construed as a special or discretionary remedy; rather, the Act ***mandates*** an award of attorney's fees as a means of fulfilling Congress's intent that the Act should be enforced by debtors acting as private attorneys general.

*Graziano*, 950 F.2d at 113 (3d Cir. 1991) (emphasis added).

> Civil suits will deter abusive practices only if it is economically feasible for consumers to bring them. Unless consumers can recover attorney fees it may not be possible for them to pursue small claims .... [U]nscrupulous collection agencies have little to fear from such suits if consumers must pay thousands of dollars in attorney fees to protect hundreds. Congress recognized this problem and specifically provided for the award of attorney fees to successful

3

plaintiffs.

*Venes v. Professional Service Bureau, Inc.*, 353 N.W.2d 671 (Minn. App. 1984). *See also DeJesus* I, 918 F.2d at 235 (awarding attorney's fees under Truth in Lending Act); *Furtado v. Bishop*, 635 F. 2d 915 (1st Cir. 1980); *Coutin v. Young & Rubicam Puerto Rico, Inc.*, 124 F. 3d 331 (1st Cir. 1997). Plaintiff is the chosen instrument of Congress to vindicate a policy that Congress considered of the highest priority and attorney's fees encourage defendants to comply with the FDCPA.

Plaintiff's Complaint alleges violations of the FDCPA for Defendants' misrepresentations, false and misleading statements and incomplete information in their communications to Plaintiff, including the presentation of un-itemized and confusing balances of the debt in Defendants' dunning letters, and their misrepresentations that Plaintiff's opportunity for settlement was limited, that Defendants had a non-existent "client" who had "authorized" a settlement, and of the amount for which they had filed suit. When Plaintiff accepted Defendants' offer of judgment, Defendants became liable to Plaintiff on her complaint. Plaintiff is entitled to judgment in the amount of $1,000.00 against Defendants plus an award of attorney's fees pursuant to the mechanisms of Fed. R. Civ. P. 68, and, additionally, as a matter of law because she is the prevailing party.

**III.    Attorney's Fees Should Be Calculated Pursuant to the Lodestar Formula**

In calculating an award of attorney's fees, the court must begin with the "lodestar" figure, which is the hours reasonably expended times an allowed hourly rate. See *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 1939 (1983) (viewing an award of fees under 42 U.S.C. §1988); *Coutin v. Young & Rubicam Puerto Rico, Inc.*, *supra*. The burden is on the applicant to prove that the fee request is reasonable, with a strong presumption that the lodestar amount represents a fair and

appropriate fee award. *City of Burlington v. Dague*, 505 U.S. 557, 112 S.Ct. 2638 (1992); *Blum v. Stenson*, 465 U.S. 886 (1984).

The lodestar analysis is applicable to all cases involving an attorney's fee shifting statute. The Supreme Court has previously noted that, "We have stated in the past that fee shifting statutes' similar language is 'a strong indication' that they are to be interpreted alike." *Independent Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754 (1989), quoting *Northcross v. Memphis Bd. Of Education*, 412 U.S. 427, 428 (1973). *See also City of Burlington v. Dague*, 112 S.Ct. at 2641 (1992) (clean water act case applying lodestar analysis); *DeJesus* I, *supra* (Truth in Lending Act).

Determination of the allowable hours rests with the sound discretion of the trial court. *Hensley*, 103 S.Ct. at 1941. A determination of the hourly rate by the trial court should consider a rate "commensurate with those which [counsel] could obtain by taking other types of cases." *Tolentino*, 46 F.3d at 652-653 (7th Cir. 1995).

A.   *Plaintiff's Counsel's Hourly Rate is Reasonable*

Fee standards in civil rights cases are applicable here, because an important public policy was vindicated. *DeJesus v. Banco Popular de Puerto Rico, supra (DeJesus* I*). See also Delaware Valley*, 478 U.S at 559-60; *Zagorski, supra*; *Tolentino*, 46 F.3d at 652; *Hollis v. Roberts*, 984 F.2d 1159, 1161 (11th Cir.1983) (FDCPA award $1,500; fees granted for 24.9 hours at $150/hr., prevailing rate in the community at the time). Currently prevailing marketplace rates establish the lodestar amount. *Missouri v. Jenkins*, 491 U.S. 274, 283 (1989); *Blum v. Stenson*, 465 U.S. 886, 895 (1983). There is a strong presumption that the lodestar figure (reasonable hours times reasonable rate) represents a reasonable fee. *Blanchard v. Bergeron*, 489 U.S. 87 (1989), quoting from *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 556 (1986).

5

"Paying counsel in FDCPA cases at rates lower than those they can obtain in the marketplace is inconsistent with the congressional desire to enforce the FDCPA through private actions, and therefore misapplies the law." *Zagorski*, *supra*, citing *Tolentino*, 46 F.3d at 653. "The district court may not reduce the established market rate by some factor that it believes accounts for differences between large firms and small firms. Lawyers of common expertise and experience in the same market are entitled to the same rate." *Bankston v. State of Illinois*, 60 F.3d 1249, 1255-56 (7th Cir.1995); *Bailey v. District of Columbia*, 839 F. Supp. 888, 891 (D.D.C. 1993) (no distinction between solo and large firm rate); *Gary v. Kason Credit Corp.*, Civil No. 3:95CV 54 (TPS) (D. Conn. Oct. 21, 1998) (rejecting "overhead" argument). Plaintiff's counsel seeks fees at $325 per hour. *See* declarations submitted herewith. That amount is already well below current hourly market rates in the greater Boston area.

**B.**     *Vigorous Defense Leads to Higher Fees*

The harder a defendant fights in a consumer action, the larger the fees ultimately become. The Fifth circuit, in *McGowan v. King, Inc.*, 661 F.2d 48, 51 (5th Cir. 1981), laid bare the practicalities of consumer litigation when it held:

> The borrower's counsel did not inflate this small [Truth-In-Lending Act] case into a large one; its protraction resulted from the stalwart defense. And although defendants are not required to yield an inch or to pay a dime not due, they may by militant resistance increase the exertions required of their opponents and thus, if unsuccessful, be required to bear that cost.

*See also*, *DeJesus v. Banco Popular de Puerto Rico*, 951 F. 2d 3, 5 (1st Cir. 1991) (*DeJesus* II). Defendants' motion to dismiss with its numerous generalized, irrelevant issues and citations required more time and effort to address than a more specific and relevant argument. *See* discussion at The

6

*Johnson* Factors, No. 1, *infra*. Thus, a higher fee application and award than might otherwise be incurred at this stage of litigation is to be expected.

## IV. No Downward Adjustments Should Be Made

The burden of proof is on the opponent to present specific evidence that a lower amount is appropriate. *E.g.*, *United States Football League v. National Football League*, 887 F.2d 408, 413 (2d Cir. 1989); *Gates v. Deukmejian*, 987 F.2d 1392, 1397-98 (9th Cir. 1992) (fee opponent must submit evidence); *Brinker v. Giuffrida*, 798 F.2d 661, 668 (3d Cir. 1986) "[T]here is ordinarily no reason for a court to disregard uncontested affidavits of a fee applicant." *Id.* quoting *Gates, supra*, citing *Blum, supra.* "The party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." *Gates, supra,* citing *Blum v. Stenson*, 465 U.S. at 892 n.5.

Plaintiff does not request an upward adjustment. If a defendant requests an adjustment downward, factors identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-719, may be considered. *Hensley*, *supra*. "[M]any of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *United States Football League v. National Football League*, 887 F.2d 408, 415 (2d Cir. 1989) citing *Hensley*, 461 U.S. at 434 n. 9. *See also, Coutin v. Young & Rubicam Puerto Rico, Inc., supra*.

### The *Johnson* Factors for Upward / Downward Adjustment of the Lodestar

1. The time and labor required — *See* Declaration of Yvonne W. Rosmarin. Plaintiff submits that the time expended in the prosecution of this action was warranted due to Defendants' tactics, bringing a motion to dismiss on highly generalized grounds irrelevant to the facts and claims in

7

this case, citing similarly irrelevant case law. Responding to generalized, irrelevant arguments often can take more time than responding to specific issues of more pertinence because of the necessity to negate all possible applications of the irrelevant theories. In these types of cases, where the monetary amount involved is small but their prosecution can cause a defendant to change its forms and procedures thereby benefitting other consumers, defendants should not be encouraged to expend resources beyond the value of the case in the hope of later reducing plaintiff's fee award. Plaintiff's counsel's time was also warranted by the need to be thorough and specific in anticipated discovery due to Defendant Goldstone's history in previous litigation.[3]

   2.  The novelty and difficulty of the question — Defendants' motion to dismiss raised complex, even though ultimately irrelevant, issues of federal court jurisdiction and construction of the Rooker-Feldman doctrine, a doctrine that has been variously applied by numerous lower courts following the leading United States Supreme Court cases on the subject. Defendants also raised state procedural issues of *res judicata*, collateral estoppel and judicial estoppel, which also had to be addressed.

In addition, this case involved interpretation of language and calculations of amounts in Defendants' collection letters. In response to Defendants' motion to dismiss, Plaintiff had to demonstrate the basis for her claims, as she would have had to do on her own motion for summary

---

[3]  *See* note 1, *supra*. *See also Sears, Roebuck & Co. v. Goldstone & Sudalter, P.C.*, 128 F. 3d 10, n. 7 (1st Cir. 1997). Moreover, Goldstone indicated in his deposition in *Martin v. Sands, supra,* that, his law firm had no ability to pay the judgment entered against it in *Sears, Roebuck & Co. v. Goldstone & Sudalter*, *supra*, even though it was in the same amount that his firm previously had collected from the plaintiff, Sears, plus attorney's fees. In fact, according to plaintiff's counsel in the *Sears* case, the judgment in that case was not paid voluntarily and Sears only collected approximately 25% of its judgment before Goldstone closed his practice as Goldstone & Sudalter, P.C. Since Goldstone similarly is the sole owner of Defendant Norfolk in this case, this information, along with his previous deposition testimony demonstrated to Plaintiff's counsel here the necessity for comprehensive discovery in the instant case.

judgment, to make clear the irrelevance of Defendants' arguments and the validity of her claims. Even had the case been straightforward, "the fact that a case is straightforward is not grounds to reduce a lodestar award." *DiFilippo v. Morizio*, 759 F.2d 231, 234 (2d Cir. 1985), citing *Blum, supra.*

     3.     The skill requisite to perform the legal services properly — Plaintiff's counsel knows of very few attorneys in Massachusetts who purport to be able to litigate plaintiffs' Consumer Credit Protection Act cases, such as this. Moreover, Massachusetts legal services programs generally do not take on the consumer cases of indigent clients who would otherwise be eligible for free legal services.

     4.     The preclusion of other employment — The time spent on this case was not, and could not be, spent at the same time on other cases. In addition, Plaintiff's counsel's representation of consumers against financial institutions and commercial enterprises precludes, due to conflicts of interest, the representation of those financial institutions at more lucrative and dependable fee arrangements.

     5.     The customary fee — *See* Declarations of John Roddy and Edwin E. Smith.

     6.     Whether the fee is fixed or contingent — In a Consumer Credit Protection Act case, such as this, the fee is virtually always contingent – not on the amount of damages, but on either an award by the Court or agreement of the opponent. In private attorney general cases, such as this, Congress encourages parties to bring suit, recognizing that counsel cannot charge the client an up-front, hourly fee, because the fee may be out of proportion to the recovery.

     If contingent, the fee award normally should compensate counsel for the risk of receiving no compensation, *Blum*, 465 U.S. at 903, and permit counsel "to earn an income that would be competitive with colleagues who get paid win or lose," such as Defendants' counsel. *Bayless v. Irv Leopold Imports, Inc.*, 659 F. Supp. 942 (D. Ore. 1987) (odometer case).

7.      Time limitations imposed by the client or the circumstances — There were none here except reasonableness. This is a factor in determining upward, not downward adjustments. *Johnson v. Georgia Highway Express, Inc., supra.*

8.      The amount involved and the results obtained — "[C]ourts generally will *not* look to the size of the damage award in determining a reasonable attorney's fee in consumer cases." *Smith v. Chapman*, 436 F. Supp. 58, 66 (W.D. Tex. 1977) (emphasis added). *Accord DeJesus v. Banco Popular de Puerto Rico, supra (DeJesus* I*).* The results in this case are nearly the full $1,000 maximum in statutory damages for Plaintiff. Because the statute itself limits damages, the amount of damages awarded does not justify a reduction in the lodestar amount. *Cowan v. Prudential Ins. Co.*, 935 F.2d 522, 527 (2d Cir.1991); *see also Furtado v. Bishop, supra.* In a Consumer Credit Protection Act case such as this one, the award is often limited by statute. "There is little reason to look to the limited award of statutory damages to determine the reasonableness of attorneys' fees which are generated by the unlimited costs of litigation." *Postow v. Oriental Bldg Ass'n*, 455 F. Supp. 781, 791 (D.D.C. 1978), *aff'd sub nom Postow v. OBA Fed. Sav. & Loan Ass'n*, 627 F. 2d 1370 (D.C. Cir. 1980) (Truth in Lending Act case). The remedial/consumer protection purpose of the statute is undermined if relatively small dollar amount cases cannot fully compensate the attorneys who take them on. *Cowan, supra; see also Bittner v. Tri-County Toyota*, 569 N.E.2d 464. 466 (Ohio S.Ct. 1991)

The First Circuit rejects "proportionality" as the basis for a fee award in cases such as this. *E.g.*, *DeJesus* I, *supra*; *Furtado, supra*; *Coutin, supra*. Indeed, fee awards in civil rights and consumer protection matters regularly exceed the plaintiff's recovery. *E.g.*, *City of Riverside*, 477 U.S. 561, 580; 106 S. Ct. 2686 (1986) (awarding $245,450 fees on a $33,350 recovery); *Grant v.*

10

*Martinez*, 973 F.2d 96, 101 (2d Cir. 1992) (fee award of $500,000 on $60,000 settlement); *United States Football League*, 887 F.2d at 413-15 ($5.5 million fee award on $3.00 recovery); *Norton v. Wilshire Credit Corp.*, 36 F. Supp. 2d 216, 220 (D.N.J. 1999) (rejecting proportionality in awarding over $57,000 in fees in an FDCPA case).  See additional discussion at V. *infra*.

9. The experience, reputation and ability of the attorney — Plaintiff's counsel has significant experience, reputation and ability in the consumer protection field. *See* declarations submitted herewith.

10. The undesirability of the case — See Declaration of Yvonne W. Rosmarin as to the risk of loss and the dearth of practitioners in the area.

11. The nature and length of the professional relationship with the client — Plaintiff's counsel limits her practice and representation of clients to those with consumer protection claims and does not derive other types of potential representation from the Plaintiff or her other clients.

12. Awards in similar cases — *See* discussion *supra* at 8. and *infra* at V. and declarations submitted herewith regarding the current market rate.

## V. "Proportionality" has no place in the Court's analysis

The amount of attorney's fees awarded pursuant to statute is not required to be proportionate to the amount of damages recovered. To the contrary, a trial court may abuse its discretion when it applies proportionality to the fee award. *Furtado v. Bishop, supra*.

The U.S. Supreme Court has previously considered the question of proportionality in attorney's fee awards and held:

> We reject the proposition that fee awards under section [42 U.S.C.] 1988 should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers.

*City of Riverside v. Rivera*, 477 U.S. at 574, 106 S.Ct. at 2694. The Court went on to state:

> A rule of proportionality would make it difficult, if not impossible, for individuals with meritorious civil rights claims but relatively small potential damages to obtain redress from the courts. This is totally inconsistent with Congress' purpose in enacting section 1988.

*Id.*, 477 U.S. at 578, 106 S.Ct. at 2696.

As long as the plaintiff is successful, the plaintiff should be awarded attorneys fees pursuant to a lodestar calculation. "In the absence of any indication that Congress intended to adopt a strict rule that attorney's fees under section 1988 be proportionate to damages recovered, we decline to adopt such a rule ourselves." *City of Riverside*, 477 U.S. at 581; 106 S. Ct. at 2697 (1986) (footnote omitted). *See also DeJesus v. Banco Popular de Puerto Rico, supra* (*DeJesus* I); *Furtado, supra*; *Zagorski v. Midwest Billing Services, Inc.*, *supra*.

The benefits to the public as a whole resulting from lawsuits which encourage compliance with statutory provisions are more important than relatively small damages awards. Indeed, when a provision for counsel fees is included in a regulatory act, it is a recognition that enforcement of the statute would be unlikely if an individual had to pay his or her own attorney's fees. "The court must . . . award attorney's fees to a prevailing plaintiff sufficient to vindicate the Congressional goal of creating 'a system of private attorneys general to aid in effective enforcement of the [Truth in Lending Act].'" *DeJesus v. Banco Popular de Puerto Rico, supra (DeJesus* I*),* citing *Postow v. OBA Fed. Sav. & Loan Ass'n*, 627 F. 2d at 1380. *See also Graziano v. Harrison*, 950 F.2d at 113 (3d Cir. 1991). The U.S. Supreme Court quoted Senator Tunney's remarks in the Congressional Record:

> "If the citizen does not have the resources, his day in court is denied him; the congressional policy which he seeks to assert and vindicate goes unvindicated; and the entire nation, not just the individual citizen,

>suffers."

*City of Riverside v. Rivera*, 477 U.S. at 575, 106 S. Ct. at 2694 (citation omitted).

The Third Circuit amplified this thought stating:

>Congress provided fee shifting to enhance enforcement of important civil rights, consumer-protection, and environmental policies. By providing competitive rates we assure that attorneys will take such cases, and hence increase the likelihood that the congressional policy of redressing public interest claims will be vindicated.

*Student Public Interest Research Group v. AT&T Bell Laboratories*, 842 F.2d 1436, 1449 (3d Cir. 1988). Attorney's fees provide the consumer an incentive and the financial ability to bring FDCPA suits and enforce congressional policy.

The amount of damages awarded often has borne no relation to the amount of attorney's fees granted. "[A]ttorney's fees awarded by district courts have 'frequently outrun the economic benefits ultimately obtained by successful litigants.'" *Evans v. Jeff D.*, 475 U.S. 717, 735; 106 S. Ct. 1531, 1541; 89 L. Ed.2d 747 (1986) (citation omitted). In the context of the Fair Credit Reporting Act, ("FCRA"), the Fourth Circuit stated:

>Proportionality of attorneys' fees to the amount recovered is not required in every action brought pursuant to the FCRA. Since there will rarely be extensive damages in an FCRA action, requiring that attorney's fees be proportionate to the amount recovered would discourage vigorous enforcement of the Act.

*Yohay v. City of Alexandria Employees Credit Union, Inc.* 827 F.2d 967, 974 (4th Cir. 1987). And under the FDCPA, the Seventh Circuit has noted that the "cumulative effect of petty violations ..... may not be petty " and thus a case involving a small amount of damages is no justification to deny attorney fees. *Zagorski*, 128 F.3d at 1167 (7th Cir. 1997) quoting *Hyde v. Small*, 123 F.3d 583, 585 (7th Cir. 1997).

13

An exception to the bar against proportionality in civil rights cases arises on the recovery of nominal damages. See, e.g. *Farrar v. Hobby*, 506 U.S. 103, 113 S.Ct. 566, 575 (1992) (Plaintiff demanding $17 million dollars but recovering nominal damages of $1.00 is entitled to no attorneys fees under civil rights statute); *but see Zagorski v. Midwest Billing Services, Inc.*, *supra* (trial courts denial of attorney fees in FDCPA case, after Plaintiff's recovery of $100.00 statutory damages, constitutes abuse of discretion). This is not the present case. By recovering nearly the full $1,000.00 in statutory damages, Plaintiff has gone beyond a recovery of "nominal" damages, has vindicated her rights under the FDCPA, and is entitle to a full attorney's fee award. This litigation accomplished the purposes of the FDCPA.

Courts have encountered many examples of fee awards disproportionate to damage awards *see, e.g. City of Riverside v. Rivera*, *supra* (1986) ($245,456.25 in attorney's fees, $33,350.00 in damages); *Building Service Local 47 v. Raceway*, 46 F.3d 1392 (6th Cir. 1995) (ERISA case, $70,185.95 in attorney's fees, $25,598.71 in damages); *Northwest Women's Center v. McMonagle*, 889 F.2d 466 (3rd Cir. 1989) (RICO case, over $64,000 in attorney's fees, $2,661.00 damages); *Duval v. Midwest Auto City, Inc.*, 578 F.2d 721, 726 (8th Cir. 1978) (Federal Odometer case, over $14,000 attorney's fees, $3,000 in damages); *Perez v. Perkiss*, 742 F. Supp. 883 (D. Del. 1990) (FDCPA case, $10,110 in attorney's fees, $1,200 damages); *Gradisher v. Check Enforcement Unit*, 2003 WL 187416 (W.D. Mich. Jan. 22, 2003) (FDCPA case; $59,872 in attorney's fees, $1,000.00 damages); *Armstrong v. The Rose Law Firm, P.A.*, 2002 WL 31050583 (D. Minn., Sept. 5, 2002) (FDCPA case; $43,180 in attorney's fees, $1,000 in statutory damages); *In re Martinez*, 266 B.R. 523, 544 (Bankr. S.D. Fla. 2001) (FDCPA case; $29,037.50 in attorney's fees, $1,000 in damages), aff'd 271 B.R. 696 (S.D. Fla. 2001).

## VI.     Plaintiff Is Entitled to an Award of Fees for Work Done in Connection with Her Petition for Attorney's Fees

A party who is awarded fees is entitled to those fees for time spent recovering fees through a fee application and related proceeedings.  *Commissioner, INS v. Jean*, 496 U.S. 154, 110 S. Ct. 2316 (1990); *DeJesus v. Banco Popular de Puerto Rico*, supra (*DeJesus* I); *Lund v. Affleck*, 587 F. 2d 75 (1st Cir. 1978). Plaintiff's submissions include time expended on preparation of her application for fees and supporting documentation, including this memorandum.  If additional time is required to be expended after this submission, Plaintiff will submit a supplemental declaration for such additional time.

## CONCLUSION

Plaintiff submits that the fee application is reasonable in time expended and amount requested. She respectfully submits that, for all the above reasons, the Court should award the Plaintiff all of her reasonable attorney's fees as requested.

Respectfully submitted,

s/Yvonne W. Rosmarin
Yvonne W. Rosmarin  BBO #566428
Law Office of Yvonne W. Rosmarin
58 Medford Street
Arlington, MA 02474
781-648-4040