UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LINDA FLINT EDGE,<br>           Plaintiff,<br><br>v.<br><br>NORFOLK FINANCIAL CORPORATION<br>and DANIEL W. GOLDSTONE,<br>           Defendants. | CIVIL ACTION NO. 04-12134 DPW |

### DEFENDANTS' OPPOSITION TO PETITION FOR ATTORNEY'S FEES

#### INTRODUCTION

This is a nuisance suit brought pursuant to the Fair Debt Collection Practices Act ("FDCPA"). Plaintiff's counsel did little more than prepare a boilerplate, one-count complaint (based on a complaint previously filed for the same plaintiff), and oppose a motion to dismiss. Moreover, at an early stage of the matter when her reasonable fees were comparatively modest, plaintiff's counsel rejected a settlement offer that was much more favorable to her client than the $1,000 offer of judgment that she ultimately counseled her client to accept. For this, counsel now contends that she is entitled to a fee in excess of $22,000. This is an outrageous request unwarranted by the law and deeply offensive to basic concepts of common sense and fairness. The defendants oppose the fee petition and ask that the Court award no more than nominal fees.

#### RELEVANT UNDISPUTED BACKGROUND

1.     The plaintiff Linda Flint Edge is a habitual debtor and habitual FDCPA claimant. In 2003 and January 2004 the plaintiff received collection-related correspondence from a company called Commonwealth Receivables, Inc. ("Commonwealth"). This correspondence concerned a credit account as to which the plaintiff was in arrears. To collect on the account,

Commonwealth brought a Small Claims action, as to which the plaintiff defaulted. The plaintiff never disputed her liability to Commonwealth, and even made partial payment. Notwithstanding her acknowledged liability, she engaged Attorney Yvonne Rosmarin.

2. In May, 2004 Rosmarin wrote Commonwealth, alleged that Commonwealth's correspondence violated technical provisions of the Fair Debt Collection Practices Act ("FDCPA"), and alleged damages of approximately $6,000. (At the time, Rosmarin did not disclose that she had previously filed suit in this Court making the same allegations.) Even in her federal FDCPA complaint the plaintiff did not deny that she was indebted as alleged by Commonwealth.

3. Although the plaintiff's action against Commonwealth was frivolous, the company made a business decision to settle with the plaintiff so as to avoid litigation expenses over a small matter. The parties consummated their settlement in August, 2004 and the plaintiff received a settlement payment of $6,500 (which included a fee for Rosmarin). (O'Connor Aff. ¶¶ 2-4)

4. At the same time that the Commonwealth matters were pending, the plaintiff was indebted on yet another credit account that had been sold to the instant defendant Norfolk Financial Corp. ("Norfolk"). After writing to the plaintiff, the plaintiff, Norfolk commenced an action in the Boston Municipal Court Small Claims session. On January 8, 2004, the plaintiff appeared in court, conceded that she was indebted as alleged, agreed to make installment payments, and agreed to the entry of judgment against her. Judgment entered for $1,664.70 plus $40.00 costs, for a total of $1,704.70. (Goldstone Aff. ¶ 2)

5. Notwithstanding her confession of liability and her promise to make payments, the plaintiff made no payments on the Norfolk judgment. Even after she received the $6,500

settlement from Commonwealth in August, 2004 the plaintiff made no payments to Norfolk. Instead, she had Attorney Rosmarin commence the instant action.

6. In October 2004 Attorney Rosmarin commenced this suit by filing a boilerplate, one-count complaint that is a virtual carbon copy of the complaint previously filed against Commonwealth. (O'Connor Aff. ¶ 3) In the complaint the plaintiff does not dispute her liability as alleged by Norfolk. Rather, her claims are based on highly technical arguments to the effect that letters from Norfolk -- which the plaintiff never disputed or questioned when she agreed to judgment in the Small Claims action -- were somehow misleading. Rosmarin filed this suit without first making demand of any kind on Norfolk.

7. Norfolk filed a motion to dismiss on November 23, 2004. The primary basis of the motion was the so-called Rooker-Feldman doctrine. In support of the motion, Norfolk cited a number of cases ordering dismissal or summary judgment in directly analogous circumstances.

8. By early January 2005 at the latest, while the motion to dismiss was pending, defense counsel John O'Connor proposed to Rosmarin that the parties resolve the matter by agreeing to drop their respective claims. Under this proposal, Norfolk would have dismissed its final $1,700 judgment against the plaintiff, and the plaintiff would have dismissed her unliquidated (and frivolous) claims against Norfolk. This offer was rejected without counter. (O'Connor Aff. ¶¶ 6-8).

9. If the plaintiff had agreed to drop this suit in exchange for dismissal of the Small Claims suit and payment of a reasonable fee for Rosmarin, Norfolk in the exercise of its business judgment would have settled on those terms. (Goldstone Aff. ¶¶ 3-5; O'Connor Aff. ¶¶ 7-8).

10. Instead of negotiating with the defendants in good faith after they raised the issue of settlement, Rosmarin waited until January 31, when she demanded $14,000.

11.     Thereafter, while the motion to dismiss was still pending, the Supreme Court issued a new Rooker-Feldman decision. See Exxon Mobil Corp. v. Saudi Basic Indus. Corp., ___ U.S. ___, 125 S.Ct. 1517 (Mar. 30, 2005). On May 4, this Court issued an order denying the motion to dismiss.

12.     On May 10, 2005 the defendants issued an offer of judgment for $1,000.00 inclusive of all interest and costs. This offer was for less than the maximum statutory amount potentially available under the FDCPA, and provided nothing for the plaintiff's alleged emotional distress and costs. The offer of judgment was also far less than the offer the defendants made by early January 2005 -- which had a value of nearly $2,000. The plaintiff accepted the reduced May 10 offer.

13.     With post-judgment interest, Norfolk's outstanding Small Claims judgment against the plaintiff is approximately $2,027. In light of the two judgments, the plaintiff's net liability to Norfolk is now about $1,000. This liability would not exist if Rosmarin had accepted Norfolk's earlier proposal, or negotiated with Norfolk at that time in good faith. (Goldstone ¶¶ 3-6; O'Connor Aff. ¶¶ 7-8).

14.     Plaintiff's counsel has been a member of the Massachusetts bar since only 1994, and in private practice since only 1995. (Rosmarin Dec. ¶ 4). She is a sole practitioner who shares office space with others in a refurbished house in Arlington. Presumably, overhead costs associated with her practice are modest. It is not clear from counsel's affidavit that she has ever tried a case. She is not being paid on an hourly basis by the plaintiff, but rather on a contingency. Indeed, from her affidavit it appears that counsel has never been compensated at an hourly rate higher than $275. (Rosmarin Dec. ¶ 13).

15. By contrast, the average billed rate for all partners at defense counsel's firm -- Peabody & Arnold LLP -- since January 1, 2005 through the present has been $237.30. In the same period defense counsel's average rate is $228. On this matter defense counsel is billing at an hourly rate of $175. (O'Connor Aff. ¶¶ 12-13).

16. Through May 31, 2005, defense counsel John O'Connor spent 43.6 hours on this matter. Plaintiff's counsel spent at least 68.9 hours on the matter in the same period. (O'Connor Aff. ¶ 14).

## ARGUMENT

I. THE FEE PETITION IS GROSSLY EXCESSIVE CONSIDERING MULTIPLE FACTORS.

   A. The Judgment for the Plaintiff is Far Less Favorable Than the Settlement Offer Made Six Months Ago.

No later than six months ago, in early January 2005, in order to initiate settlement-related conversations, defense counsel offered to plaintiff a settlement with a cash-equivalent value of approximately $2,000. The plaintiff rejected this offer, presumably on the advice of plaintiff's counsel, and made no counter. At that time, had plaintiff's counsel offered to settle for payment of a reasonable attorney's fee and dismissal of the Small Claims judgment against the plaintiff (worth approximately $2,000), the defendants would have settled on those terms.

Rather than negotiating with the defendants in good faith, plaintiff's counsel ignored the opportunity to discuss settlement and pursued a course apparently designed to maximize her potential fee recovery. Counsel waited weeks -- until January 31 -- to make the plaintiff's first demand of $14,000. Thereafter, once this Court had denied the motion to dismiss, plaintiff's counsel advised the plaintiff to accept an offer of judgment for only $1,000 inclusive of all interest and costs.

This is remarkable. The $1,000 judgment that counsel advised her client to accept is <u>less</u> than the full statutory damages potentially available to the plaintiff under the FDCPA, and includes <u>nothing</u> for the plaintiff's alleged emotional distress. Moreover, and most importantly, the judgment that counsel advised the plaintiff to accept is over $1,000 <u>less</u> than the offer made to the plaintiff <u>six months ago</u>. Plaintiff's counsel has left her client with a net liability to the defendants of approximately $1,027.00. At the same time, by refusing to negotiate in good faith, plaintiff's counsel has positioned <u>herself</u> to request a fee award of $22,000. Counsel built up her fee claim at her client's expense.

This is a radical abuse of the FDCPA, as well as an affront to basic notions of equity and fair play. On this basis alone, the Court would be justified in reducing the fees requested by plaintiff's counsel to the <u>reasonable</u> amount that had accrued as of the time of the defendants' January settlement offer. <u>See, e.g.</u>, <u>Lee v. Thomas & Thomas</u>, 109 F.3d 302 (6th Cir. 1997) (no entitlement to fees incurred after rejected offer); <u>Solomon v. Onyx Acceptance Corp.</u>, 222 F.R.D. 418 (C.D. Cal. 2004) (no post-offer fees where ultimate settlement was less than earlier offer); <u>Vera v. Trans-Continental Credit Collec. Corp.</u>, 1999 U.S. Dist. LEXIS 6937 (S.D.N.Y. May 10, 1999) (no fees for period after offer).

Nor can counsel avoid this problem by sharing any fee award with the plaintiff. If that is counsel's plan, then her entire fee petition and related materials are a sham and inconsistent with the FDCPA. The statute provides for statutory damages up to $1,000 plus interest and costs, provable actual damages, and reasonable fees for <u>counsel</u>. Cf. <u>Padilla v. Payco General Am. Credit, Inc.</u>, 161 F. Supp. 2d 264 (S.D.N.Y. 2001) (<u>pro se</u> litigant not entitled to fee award); <u>Strange v. Wexler</u>, 796 F. Supp. 1117 (N.D. Ill. 1992) (same). Counsel who gin up large fee awards based on specific alleged tasks and rates only to split their fees with their clients mock

6

this statutory scheme and the entire "lodestar" analysis that they typically tout. What is the point of a statutory damage cap if plaintiff and counsel can collude and avoid it? What is the point of documenting and litigating time and rates and reasonableness if counsel is not going to accept a full court-ordered fee award? If counsel is going to split her fee, then presumably she believes her split, "partial" fee is fair and reasonable. That being so, why is she entitled to demand more? The Court should presume that the entire fee requested is for <u>counsel</u> alone, and evaluate it on that basis.

    B.    <u>The Rate Proposed By Plaintiff's Counsel Is Excessive.</u>

Viewed from a number of different perspectives, the rate of $325 per hour proposed by plaintiff's counsel is ludicrous. First, it is important to bear in mind that this rate is <u>purely fictional</u>. The plaintiff is not paying plaintiff's counsel at this rate. Indeed, she is not paying plaintiff's counsel anything. Counsel is handling the matter on a contingency basis. Moreover, from counsel's own submissions, it appears that she has <u>never</u> been compensated on any matter that she has ever worked on at a rate higher than $275 per hour. Any implication that $325 per hour is in any sense a real rate based on experience or practice is wrong.

Second, the rate proposed by plaintiff's counsel is a full $150 higher <u>per hour</u> than the rate at which defense counsel is being paid by the defendants as to the <u>same</u> matter. There is no good reason why plaintiff's counsel should be compensated at a rate that is so high in relative terms. Plaintiff's counsel is a sole practitioner with comparatively modest overhead costs. If defense counsel can profitably handle matters such as this at a rate of $175 hourly, there is absolutely no reason why plaintiff's counsel cannot. This is particularly so considering that the rate charged by defense counsel reflects market realities for matters of this type, realities that counsel's fee petition <u>ignores</u>. Plaintiff's counsel has <u>never</u> been compensated by any of the

FDCPA claimants that she has represented at a rate of $325 per hour. This reality should be taken into account.

Nor is the length of time that the plaintiff's counsel has been a member of the Illinois bar relevant. Plaintiff's counsel spent many years of her legal career as a law clerk and dealing with issues on an advisory, policy level. (Rosmarin Dec. ¶ 3). She has been in private practice only since 1995, four years less than defense counsel. As plaintiff's counsel has less practical litigation experience than defense counsel, there is no good reason why she should be paid $150 per hour more than defense counsel. (O'Connor Aff. ¶¶ 10-13).

Third, a proper rate should take into account the fact that the plaintiff asserted only technical, garden-variety FDCPA claims. The sole theory of the plaintiff's single claim was that some of Norfolk's letters to the plaintiff were misleading. This is a straightforward claim in any event, but it was also a carbon copy of claims that same plaintiff and the same plaintiff's counsel had asserted months before in the Commonwealth action. (O'Connor Aff. ¶ 3). A reduction in requested fees is in order given that the FDCPA claims at issue were neither complex nor novel. E.g., In Re Martinez, 266 B.R. 523 (S.D. Fla. 2001), aff'd., 311 F.3d 1272 (11th Cir. 2002); Bish v. Credit Control Systems, Inc., 1991 W.L. 165035 (W.D.N.Y. 1991). See also Altergott v. Modern Collection Techniques, Inc., 864 F. Supp. 778 (N.D. Ill. 1994).

Fourth, the rate must be considered in light of the very poor result that plaintiff's counsel achieved for her client. For the reasons discussed above in Section A, plaintiff's counsel achieved a bad result for her client, and did so under circumstances that suggest that counsel was more interested in building her fee claim than in the net result for her client. Because of counsel's self-serving approach, the plaintiff remains indebted to the defendant Norfolk for over $1,000. This could have been avoided had plaintiff's counsel negotiated in good faith when she

had the opportunity, rather than delaying, charging more fees, and then accepting the defendants' nominal offer of judgment. Plaintiff's counsel is not entitled to a premium hourly rate when she provided far less than premium service, and achieved far less than a premium result.

C.  The Hours Alleged By Plaintiff's Counsel Are Excessive.

Beyond her excessive proposed rate, the time that plaintiff's counsel has spent litigating this $1,000 matter is manifestly excessive. There are many examples. First and foremost, the plaintiff seeks to collect for work preparing discovery requests that she never served and that have not advanced her client's interests in the least.[1] According to her billing records, plaintiff's counsel on May 6, 9, 10, and 11 spent a total of 8.7 hours preparing a deposition notice and standard written discovery requests to be sent to the defendants. This is an extraordinarily excessive amount of time to prepare boilerplate materials that counsel doubtless has in her computer system already. And the request for reimbursement is particularly unfair because she never even served the requests, and they have not aided the plaintiff at all.

Second, counsel's billing records reflect a total of 19.6 hours on legal research and review of decisional law. This also is excessive. Counsel goes to great length arguing that she specializes in representing consumers in such actions and that she has written extensively on the very subjects at issue in this litigation. Common sense and experience dictate that, in the circumstances, counsel did not need twenty hours to familiarize herself with the authorities bearing on this dispute. The time claimed for legal research is unreasonable.

---

[1] She prepared the requests even after defense counsel: (1) made the defendants' voluntary disclosures and production; and (2) advised counsel that the defendants already had produced all discoverable documents. (O'Connor Aff. ¶ 9.)

9

Third, counsel claims to have spent 3.1 hours preparing for the Court's May 4 motion hearing. This is excessive considering all the time spent by counsel on alleged research, and considering that the May 4 hearing was the second occasion (following the March 24 hearing) on which the parties had appeared in court prepared to argue the motion to dismiss. In the circumstances, counsel should have needed nowhere near 3.1 hours to prepare herself for that hearing.

Fourth, counsel's records indicate that she spent 1.5 hours drafting the complaint. While this may not seem a significant item by itself, considering that the complaint is effectively a carbon copy of the prior complaint prepared and filed only months before in the prior Commonwealth action (O'Connor Aff. ¶ 3), the time allegedly spent is excessive. Moreover, this excess is representative of the generally heavy-handed approach to time entries that is evident throughout the bills. The time allegedly spent preparing the complaint is unreasonable.

Fifth, counsel should not be reimbursed for time spent preparing the fee petition. None of this work advanced her client's interests. Moreover, the alleged time -- 7.8 hours -- is entirely out of line. All of the materials are likely boilerplate forms that the plaintiff has in her system. Counsel should not be able to claim on the one hand that she is a specialist in consumer-related litigation and has handled these matters repeatedly, and claim on the other hand that it took her a full day to prepare her fee petition. All charges related to the fee petition are unreasonable. If this time is compensable at all, it should be at a reduced rate. Compare Brewster v. Dukakis, 3 F.3d 488, 494 (1st Cir. 1993).

Sixth, the gross time spent by plaintiff's counsel in prosecuting the action is excessive when compared with time spent by defense counsel. Through May 31, 2005, plaintiff's counsel claims to have spent 68.9 hours on the matter. Through that same date, defense counsel John

O'Connor spent only 43.6 hours on the matter. (O'Connor Aff. ¶ 14). It is reasonable to compare the gross time invested by both counsel on the <u>same</u> matter. Defense counsel was able to complete tasks related to the case in 25.3 <u>fewer hours</u> than plaintiff's counsel. Plaintiff's counsel overworked the matter.

II.  THE RODDY AND SMITH DECLARATIONS SHOULD BE IGNORED.

The Court should ignore the declarations of John Roddy and Edwin Smith. To begin with, most importantly, neither declarant apparently has any familiarity with the circumstances of this case. For example, neither declarant seems to know that plaintiff's counsel advised her client to accept an offer of judgment worth only about 50% of the plaintiff's outstanding liability to Norfolk, and which leaves the plaintiff with an enforceable net indebtedness to Norfolk of about $1,000. Neither declarant addresses the fact that plaintiff's counsel could have avoided this undesirable result for her client <u>and</u> received a reasonable fee had she responded in good faith to a settlement proposal made six months ago. Apparently neither declarant understands that the plaintiff's purported FDCPA claims were straightforward, neither novel nor complex, and were asserted in a cookie-cutter complaint based on another complaint filed a few months before the current suit by the same counsel for the same plaintiff. For all that appears, neither declarant knows <u>anything</u> about the context from which Rosmarin's fee petition arises, about the nature of the litigation, or about the implications for the plaintiff. As such, they cannot reasonably opine as to a reasonable hourly rate.

In addition, plaintiff's counsel and Roddy are engaged in the same legal business representing the same class of claimants. On information and belief they are personal friends who exchange many referrals and have worked together on many prior matters. Further, because of the nature of his practice, Roddy has a vested interest in seeing Rosmarin's fee set at the

11

highest possible rate. All things considered, the Roddy and Smith declarations are unreliable and worthless. The Court should ignore them.

III.   IN ACCORDANCE WITH THE STANDARD PRACTICE, THE COURT SHOULD APPLY AN ACROSS-THE-BOARD REDUCTION OF 10%.

In response to fee requests, courts commonly apply an across-the-board reduction of as much as 10% to compensate for unavoidable duplication of effort and inefficiencies. E.g., Massachusetts Dept. of Public Health v. School Committee of Tewksbury, 841 F. Supp. 449, 459-462 (D. Mass. 1993); Cooper v. Sunshine Recoveries, Inc., 2001 U.S. Dist. LEXIS 8938 (S.D.N.Y. June 27, 2001); Norton v. Wilshire Credit Corp., 36 F. Supp. 2d 216 (D.N.J. 1999); Gates v. Deukmejian, 987 F.2d 1392, 1396 (9th Cir. 1992); Davis v. City & County of San Francisco, 976 F.2d 1536, 1543 (9th Cir. 1992). Such a reduction is in order here, notwithstanding counsel's claim to have applied a reduction already. Particularly, because of the poor result that counsel achieved for the plaintiff (which has left the plaintiff saddled with an entirely avoidable outstanding judgment), the court should opt for a full 10% reduction.

## CONCLUSION

This case and counsel's fee petition present a grotesquely counterintuitive scenario:

- The plaintiff/debtor enjoys the use of a credit account and then defaults on her payment obligation.

- The debtor ignores straightforward correspondence from the owner of the debt, forcing the owner to file a collection action.

- The debtor then appears in Court, acknowledges her liability, agrees to a payment plan, and agrees to the entry of judgment against her. Although she has the chance, the debtor raises no issue as to the collection-related correspondence and does not allege that the correspondence was problematic in any way.

- The debtor then has counsel <u>sue</u> the owner of the <u>acknowledged</u> debt under the FDCPA.
- The debt owner/defendant moves to dismiss the suit, citing pertinent cases and the plaintiff's prior <u>agreement</u> as to her liability and obligation to repay the debt owner.
- While the motion is pending, the debt owner offers to settle by dropping its judgment against the debtor (worth approximately $2,000.00), but counsel rejects the offer without counter.
- Thereafter, the Supreme Court revises the law relative to the debt owner's motion.
- The motion to dismiss is denied, so the debt owner makes an offer of $1,000, which is only about 50% of the value of its <u>prior</u> offer.
- On the advice of counsel, the debtor accepts this <u>reduced</u> second offer, which leaves in place a state court judgment against the plaintiff of almost $2,000.
- Plaintiff's counsel then submits a fee application for <u>over $22,000</u>.

Simply to recite these circumstances is to expose the extreme abuses to which the FDCPA is subject, and the profoundly unfair results that it can create. The statute can be used by irresponsible parties to avoid repayment of <u>acknowledged</u> obligations, and to extort settlements from honest, socially valuable businesses like Norfolk by forcing them to choose between incurring extensive costs defending against technical, irrelevant claims, and paying off claimants and their attorneys just to buy peace. The statute can also be used by cynical plaintiffs' lawyers to manipulate minor matters involving <u>undisputed</u> debts into enormous, confiscatory fee claims that make reasonable resolution of the underlying claims impossible.

The law should discourage such abuses and unfairness. Accordingly, the defendants respectfully request that the Court award to plaintiff's counsel no more than a nominal fee. Any other disposition will reward undeserving claimants and punish the defendants for circumstances (the refusal of plaintiff's counsel to negotiate in good faith in her client's best interests; a change of law by the Supreme Court) beyond their control.

                                      NORFOLK FINANCIAL CORPORATION and
                                      DANIEL W. GOLDSTONE

                                      By their attorney,

                                      /s/ John J. O'Connor
                                      John J. O'Connor
                                      BBO # 555251
                                      PEABODY & ARNOLD LLP
                                      30 Rowes Wharf
                                      Boston, MA  02110
                                      (617) 951-2100

Dated: June 14, 2005.

## CERTIFICATE OF SERVICE

I hereby certify that on this date I served a copy of the attached Opposition by first class mail on the following:

>Yvonne W. Rosmarin, Esq.
>58 Medford Street
>Arlington, MA  02474

Dated: June 14, 2005

_/s/ John J. O'Connor_
John J. O'Connor

616229/13906-90990