IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LINDA FLINT EDGE, ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | No.   04-12134  DPW |
| ) | |
| NORFOLK FINANCIAL CORPORATION ) | |
| and DANIEL W. GOLDSTONE, ) | |
|     Defendants. ) | |

**PLAINTIFF'S REPLY MEMORANDUM TO DEFENDANTS'
OPPOSITION TO HER PETITION FOR ATTORNEY'S FEES**

**I.   INTRODUCTION**

Defendants' opposition to Plaintiff's petition for attorney's fees is based on fiction, inaccurate presumptions, irrelevancies and spurious and scurrilous accusations in an inflammatory, emotional appeal.  Like the Wizard of Oz in L. Frank Baum's classic tale, when one looks behind the curtain there is nothing of substance.  Defendants' unsupported arguments, contained in their affidavits as well as their opposition memorandum boil down to: (1) Plaintiff's FDCPA lawsuit and claims are frivolous, Plaintiff and her counsel are bad characters misusing the FDCPA, and Defendants are the innocent victims of a scheme to "extort" money from them; (2) Plaintiff rejected an earlier, better offer than Defendants' offer of judgment she accepted because Plaintiff's counsel was trying to ratchet up fees; (3) Plaintiff's counsel's time submitted is not accurate because her practice uses only forms and treats cases in a "mill" fashion; (4) Plaintiff's counsel has much less relevant experience than Defendants' counsel, who charges less; (5) Plaintiff's declarations submitted supporting her counsel's hourly rate are unreliable and worthless and Defendants' counsel's opinion is a more accurate statement of a reasonable market rate; and (6) an "across the board" reduction of fees by 10% is "standard."  None

of these contentions have merit.

## II. MANY OF DEFENDANTS' SUPPORTING "FACTS" ARE NOT ACCURATE

### A. Plaintiff Did Not Reject an Earlier, More Favorable Settlement Offer

Defendants' "undisputed background" facts in their opposition contain pejorative descriptions of the Plaintiff and her counsel, facts that don't exist, inaccurate presumptions, irrelevant matters, and characterizations that are not only *not* undisputed, but argumentative rather than factual.

Most notable among these is Defendants' position that their January 2005 settlement offer to abandon their $1,704.70 judgment against the Plaintiff in the state small claims court lawsuit somehow included attorney's fees. Defendants' counsel's affidavit, unlike their opposition memorandum, explicitly states at ¶ 6 in regard to that offer, "I did not offer fees at that time. . . ." Nevertheless, Defendants' counsel adds, after the fact, that he did not "indicate" that Defendants would not pay fees (¶ 6) and that he "was prepared to recommend" to his clients that they pay fees (¶ 7) and that he "would have recommended" that his client pay fees (¶ 8).

What Defendants' counsel or Defendants might have or would have done is irrelevant. The fact remains that the settlement offer Defendants actually made did *not* include attorney's fees.[1] Plaintiff's counsel has no way to guess what Defendants "woulda" done. Defendants offered merely to abandon a $1,704.70 judgment in exchange for Plaintiff abandoning her claim worth much more, since it included a claim for attorney's fees, which at that point were well over five or six times the amount of Defendants' small claims judgment. Plaintiff's rejection without further negotiation was reasonable considering how far apart the parties' positions were at that point. Defendants' assertions in their opposition that the

---

[1] See also Rosmarin 2d Decl. at ¶ 5. In a prior conversation on December 3, 2004, Defendants' counsel had once before suggested that Plaintiff could respond to their motion to dismiss by "just dismiss[ing] the case," with no mention of attorney's fees.

2

offer of judgment Plaintiff accepted, which ***does** include* attorney's fees is *less* than their January 11, 2005 settlement offer that did ***not*** include fees has no basis in fact.

Additionally, Plaintiff's rejection of the January 11, 2005 offer was reasonable at that time because her motion to vacate the judgment in small claims court was pending. Her counsel's belief that Plaintiff would ultimately prevail on Defendants' pending motion to dismiss was certainly reasonable, as she did prevail. Defendants suggest that their motion to dismiss was meritorious and denied only because the Supreme Court's decision in *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, __ U.S. __, 125 S. Ct. 310, 160 L. Ed. 2d 221 (2005), changed the law. Defs' Opp. p. 14. This also is inaccurate. The Supreme Court in *Exxon Mobil* merely clarified the law and did not change it. The *Exxon Mobil* Court cited with approval cases that Plaintiff had relied upon in her opposition of Defendants' motion to dismiss. Regardless of this clarification of the law, Defendants' invocation of the Rooker-Feldman doctrine in the first instance was irrelevant to Plaintiff's claims in this case and was inapplicable under any interpretation of the doctrine, as pointed out in Plaintiff's opposition.

On January 31, 2005, Plaintiff did in fact make a written counter-offer to settle the case for $14,000, inclusive of fees and costs. Defendants never responded to this offer. In fact, at a later date, even after denial of their motion to dismiss, at a time when Plaintiff's fees had increased, Defendants' counsel rejected the notion of settling for this same amount Plaintiff had offered on January 31. 2d Rosmarin Decl. ¶ 12. Certainly with this hindsight, Plaintiff's assessment as of January 11, before Defendant' motion was denied, that further settlement discussions with Defendants would be a waste of time was borne out.

Different considerations are presented when an offer of judgment is made than when a settlement offer is made. Rule 68's cost-shifting provisions place a financial risk on plaintiffs if they do

not attain a higher judgment, requiring plaintiffs to be cautious. A plaintiff always takes the risk that a jury may not agree with him or her as to how to value of his or her actual damages, such as the emotional distress the defendant's actions caused. Given all the circumstances of this case, including the risk of nonpayment of a judgment, Plaintiff determined that continuing to litigate for the additional $150 in statutory damages here would not be prudent. Moreover, judgments are of added value to plaintiffs and consequential detriment to defendants. With a judgment there can be no request by defendants for confidentiality. Where, as here, a defendant's industry is regulated and the defendant required to be licensed (a requirement with which Defendants have failed to comply), entry of a judgment against the defendant is a factor for denial of a license. *See e.g.* 209 C.M.R. §§ 18.04(2)(a) and 18.04(2)(c)(2).

  B.  **Defendants' Portrayal of Plaintiff's Counsel Is Fictitious**

Defendants go to great lengths to deride Plaintiff's counsel's experience and practice. They ignore information Plaintiff submitted with her fee petition, mischaracterize facts and make up others. Indeed, Defendants have fabricated a fee-splitting scenario out of whole cloth, which they argue at length in their memorandum at pp. 6-7, as if it were fact.

  1.  *Counsel's Experience and Practice*

Defendants' further suggestion that Plaintiff's counsel has never tried a case, Defs' Opp. p.4, ignores information in ¶¶ 1 and 8 of her declaration previously submitted stating that she is a member of the trial bar of the U.S. District Court for the Northern District of Illinois and that she has tried a class action in that court. *See also* Rosmarin 2d Decl. ¶ 18 and 19.

Defendants emphasize that Plaintiff's counsel has been a member of the Massachusetts bar "since only 1994" and, without any basis, assert that the length of time she has been a member of the

Illinois bar is irrelevant. Defs' Opp. pp.4, 8. Defendants also contend that Plaintiff's counsel's length of time in *private* practice is somehow more relevant than her overall experience.[2] It is unclear why Defendants believe that Plaintiff's counsel's extensive litigation experience in Chicago courtrooms for over ten years as an attorney with the Legal Assistance Foundation of Chicago, one of the nation's most respected, highest quality and largest legal services program, is unworthy of merit in Massachusetts.[3] Moreover, Defendants' characterization of Plaintiff's counsel's work with the National Consumer Law Center in Boston as merely "dealing with issues on an advisory, policy level," Defs' Opp. p.8, neglects the large amounts of time Plaintiff's counsel spent on training and litigation assistance to lawyers nationally on consumer law. Rosmarin Decl. ¶¶ 3,7; Rosmarin 2d Decl. ¶ 20.

Defendants' inaccurate characterization of Plaintiff's counsel's office space demonstrates how excessive are their attempts to diminish her qualifications. Plaintiff's counsel's three-room suite in a commercial office building housing several other attorneys and businesses in the commercial area of Arlington Center, while formerly residential space (as were many of the surrounding commercial buildings, typical for Boston suburbs), can hardly be described as "a refurbished house." Defs' Opp. p.4. *See* Rosmarin 2d Decl. ¶ 21. Defendants make assumptions about overhead costs without any basis in fact. *See id.*

### 2. *Relationship with Attorney John Roddy*

Defendants make similar false assumptions about Plaintiff's counsel's relationship with Attorney

---

[2] With respect to awards of attorney's fees, legal services programs are entitled to fee awards on the same bases and at the same rates as attorneys in private practice. *Blum v. Stenson*, 465 U.S. 886 (1984).

[3] East-coast notions notwithstanding, the Midwest has large, important cities. In fact Chicago, much larger than Boston, has real courts, two major daily newspapers and twice the number of major league baseball teams as Boston.

John Roddy and argue them as if they were fact. Defs' Opp. pp.11-12. Contrary to Defendants' assertions, Plaintiff's counsel and Attorney Roddy are not personal friends, have never worked together any prior matter and do not "exchange many referrals." Rosmarin 2d Decl. ¶ 2. Moreover, Attorney Roddy has no "vested interest in seeing Rosmarin's fees set at the highest possible rate," as Defendants maintain. Attorney Roddy has been awarded fees at a rate much higher than that sought here by Plaintiff's counsel. Roddy Decl. ¶ 8. The rate sought in this case is the same rate Plaintiff's counsel charges individual clients at this time and less than the rate she charges for class actions seeking damages. Rosmarin 2d Decl. ¶ 22.

### 3. *Assumed Use of "Boilerplate" Forms*

Defendants make further false and baseless assumptions about "boilerplate" forms Plaintiff's counsel has "in her system." No defendant in any of Plaintiff's counsel's previous cases had ever raised the issues involved in Defendants' motion to dismiss — the Rooker-Feldman doctrine, issue and claim preclusion, and judicial estoppel — issues irrelevant to the types of cases she handles, and she had no such form memorandum on these issues. Rosmarin 2d Decl. ¶ 24. Similarly, since Plaintiff's counsel's only previous fee petition was for partial fees on issues entirely different from those in this case, and very specific to that case, she had no "boilerplate" forms applicable to this case. *Id.* at ¶ 25. Nor was the discovery prepared in this case "boilerplate." Based on Plaintiff's counsel's previous experience litigating against Defendant Daniel Goldstone ("Goldstone") and his now-defunct previous collection firm, as well as Goldstone's own documented experiences as a defendant in another previous case, she determined that specific, thorough discovery was warranted in this case and that is what she prepared. Rosmarin 2d Decl. ¶¶ 14 and 15.

Finally, Defendants falsely describe the complaint filed in this case as a "virtual carbon copy" of

6

a complaint filed in a previous case, submitted with Defendants' counsel's affidavit (*sans* exhibits). Even a cursory examination of both complaints demonstrates distinct differences. The complaint in the earlier case is notice pleading, gives very few facts and only summarily describes the FDCPA violations.[4] The complaint in this case consists of fact pleading, detailed factual allegations and detailed descriptions of Defendants' violations of the FDCPA.

        **C.**      **Defendants' Portrayal of Their Counsel's and His Firm's Fees Is Misleading**

Defendants' counsel's affidavit states that his hourly billing rate for this case is $175 and that his "average billing rate" for the past 11 months is $218.75 and that of his firm's partners for the past five months, $237.30.[5] O'Connor Affid. ¶ 12. Counsel gives no guidance as to what factors make up these "average billing rates" and the court can only guess.

Generally, an average billing "rate" is an arithmetic mean of quoted hourly rates. However, the numbers counsel gives include cents and are not rounded in the way lawyers' billing rates normally are. They appear to be average hourly "yields" rather than "rates." Average hourly yields are the quotient of gross revenues divided by billable hours. Included are hours billed but not collected, uncompensated hours spent on contingency fee cases, and a range of billing rates for different kinds of cases, including any lower rates for insurance defense work. The result is an artificially lower rate than standard billing rates. What is conspicuously absent from counsel's affidavit is any statement of his and his partners' usual and/or standard billing rate(s) or range of rates.

What is clear is that Defendants' counsel's rate of $175 for this case is lower than some of his

---

[4] Neither the previous case itself nor the tactical decision to sue a completely different set of defendants using a notice pleading style are of any relevance to the issues in Plaintiff's fee petition.

[5] Although counsel's affidavit states that his "average billing rate" is for the period from July 1, 2005 to the present, Plaintiff will assume that he meant 2004 rather than 2005.

other rates, because his "average" rate is higher than $175. He gives no indication of the basis for this reduced rate. Reduced rates may be available for reasons that can include: an assured volume of steady business, the use of primarily form pleadings, the client's participation in the work or a close relationship. There is no way to know the reason in this case from what is stated.

In addition, Defendants' counsel's and his firm's practice covers many different areas. *Id.* at ¶ 11. His background does not show the same level of experience and specialization in consumer protection law that Plaintiff's counsel's does.

### D.     Defendants' Portrayal of the Plaintiff Is Inaccurate and Irrelevant

Defendants assertions that Plaintiff "conceded" she owed the debt in question and that she "agreed" to entry of the small claims court judgment against her are not only irrelevant to this case and Plaintiff's fee petition but are not based on any facts of record. In fact, they contradict the facts of record. *See* Edge Affid. (filed with Plf's Opp. to Mot. to Dismiss) and Plaintiff's Mot. to Vacate Jmt (Exh. A to Defs' Mot. to Supp. Record).[6]

Whether or not an FDCPA plaintiff owes a debt is irrelevant to any FDCPA claim. *See* Plf's Opp. to Mot. to Dismiss at V.B. [7] Whether an FDCPA plaintiff has previously sued the same or a different debt collector who has violated the FDCPA is similarly irrelevant, as is whether or not she owed the debt involved in any such previous case. Congress has determined that whether or not a person owes a debt, he or she is entitled to be free from unfair, misleading and abusive collection

---

[6]    Contrary assertions in Defendant Goldstone's affidavit filed with Defendants' motion to dismiss were not made on personal knowledge, as he was not present in the small claims court when Plaintiff's case was called and judgment entered.

[7]    Even though Plaintiff *did* dispute the debt (Edge Affid. ¶¶ 2-3), failure of a consumer to dispute the validity of a debt cannot be construed as an admission of liability. FDCPA § 1692g(c).

practices. *See* 15 U.S.C. § 1692. Congress intended for consumers, like Plaintiff, to be the primary enforcement mechanism for the FDCPA, through lawsuits like those brought by Plaintiff. *See* Plf's Fee Memo. at II. In fact, her settlement of the previous case, against Commonwealth Receivables, Inc. ("Commonwealth") and its owner Chad Goldstone, Defendant Goldstone's brother, resulted in an agreement by Commonwealth to cease using their form letters that violated the FDCPA.

Defendants imply that, because Plaintiff was compensated for Commonwealth's and Chad Goldstone's violations of the FDCPA, she has no right to be compensated by Defendants for their own violations of the FDCPA in collecting a different debt. Under Defendants' logic, once a consumer has brought a lawsuit for violations of the FDCPA by one debt collector, he or she would have to endure further unfair, deceptive, misleading or abusive practices by subsequent debt collectors without complaint or recourse or be labeled an "habitual FDCPA claimant." [8]

### III.  DEFENDANTS' ARGUMENTS ARE NOT SUPPORTED BY THE LAW

In Plaintiff's counsel's experience, not a single debt collector has ever admitted that it has violated the FDCPA, that a plaintiff's lawsuit is anything other than a "nuisance" suit, or that a plaintiff's claims are anything other than "technical," "hyper-technical" or "frivolous." There is nothing "technical" about Plaintiff's complaints in this lawsuit. She alleges serious, misleading statements and implications in Defendants' form collection letters routinely sent to debtors. *See* Plf's Opp. to Mot. to Dismiss pp.3-10. If Defendants truly believed Plaintiff's suit was brought in bad faith, they could have attempted to invoke their remedies under FDCPA § 1692k(a)(3).

Notably, Defendants' motion to dismiss was ***not*** based on any theory that Plaintiff had failed to

---

[8]   Plaintiff could more accurately portray Defendants and Commonwealth as "habitual" FDCPA violators, based on the FDCPA violations in their the form letters involved in these two cases.

9

state a cause of action. Although Plaintiff could have prevailed on a summary judgment motion, she was spared this effort when she accepted Defendants offer of judgment for liability on her claims. It would be unreasonable for Plaintiff to spend additional time litigating the merits of her claims at this point, after judgment has entered.

### A.    Congress Intended for Debtors to Enforce the FDCPA

As fully set out with numerous citations in Plaintiff's Memorandum in Support of Her Petition for Attorney's Fees ("Plf's Fee Memo") at section II, the FDCPA mandates an award of attorney's fees in this case, as it was Congress's intention to facilitate consumers' private enforcement of the FDCPA. Defendants have not presented any authority to dispute this.

### B.    The Fees Sought by Plaintiff Are Reasonable

Contrary to Defendants' inaccurate and irrelevant portrayal of Plaintiff as an "habitual debtor" who "extorts settlements from honest, socially valuable businesses like Norfolk," Def's Opp. p. 13, Plaintiff has vindicated an important public policy and is entitled to a full award of attorney's fees at currently prevailing market rates. Plf's Fee Memo. at III.

Defendants' main argument, that Plaintiff rejected a more favorable settlement offer in January, is not based in fact. *See* II.A. *supra*. Defendants' other arguments for a downward adjustment of Plaintiff's attorney's fees address only a few of the factors identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-719. *See* Plf's Fee Memo. at IV for a full discussion of these factors, with citations. Defendants' arguments regarding these factors are addressed here.

#### 1.    *Time and Labor Required*

Defendants maintain that Plaintiff's counsel's time spent preparing the complaint, responding to Defendants' motion to dismiss and preparing her fee petition is excessive based on their inaccurate

claim that Plaintiff's complaint is a "virtual carbon copy" of a previous one, and their incorrect assumptions that other work was based on "boilerplate" forms. *See* discussion *supra* at II.B.3. They further assert that discovery work, reasonable at the time performed in light of the discovery schedule, Defendants' counsel's trial schedule and Plaintiff's knowledge of and experience with Defendant Goldstone from previous litigation, is not compensable because it was never served. It was never served only because Plaintiff accepted Defendants' offer of judgment made prior to service. *See* Rosmarin 2d Decl. ¶ 16.

Defendants' attack on time spent by Plaintiff's counsel preparing for oral argument on their motion to dismiss is based on their ***incorrect*** assertion that May 4, 2005 was the "second occasion (following the March 24 hearing) on which the parties had appeared in court prepared to argue the motion to dismiss." Defs' Opp. p.10. The parties appeared in court on March 24 for a Scheduling Conference. March 24 was never set as a date for a hearing on Defendants' motion to dismiss. At that Scheduling Conference, the court set May 4, 2005 as the date for a hearing on Defendants' motion.

Finally, Defendants challenge Plaintiff's counsel's time as excessive because Defendants' counsel spent less time on the case. Several other explanations are available to explain this difference. Defendants' counsel, by his own admission, filed a "cookie-cutter," form motion, that was very generalized. Rosmarin 2d Decl. ¶ 26. However, Defendants' "cookie-cutter" motion cost Plaintiff more time to respond, precisely because its form, generalized and irrelevant arguments required negation of all possible applications of its irrelevant theories. *See* discussion in Plf's Fee Memo. at IV.1.

Defendants' Answer to Plaintiff's Complaint also is very formulaic, as only one paragraph contains any specific facts. By contrast, Plaintiff's complaint alleges specific facts and violations of the FDCPA. In addition, a plaintiff must also conduct a reasonable inquiry pursuant to Fed. R. Civ. P. 11

11

to ascertain that the factual contentions have evidentiary support and that the claims are warranted. This means that Plaintiff's counsel must investigate the facts prior to filing the complaint, examine Plaintiff's documents to determine the basis for her claims and, in this particular case, perform calculations to rule out any legitimate basis for the irregular increases in the balances contained in Defendants' collection letters.[9]

Moreover, Plaintiff prepared the parties' joint statement for the Scheduling Conference. Plaintiff also prepared discovery that was not yet served before Plaintiff received Defendants' offer of judgment. There is no indication that Defendants prepared any discovery and their initial Rule 26(a) disclosures included no documents and disclosed no witnesses other than Plaintiff and Defendant Goldstone.

### 2. *Novelty and Difficulty of the Issues*

As previously discussed, the issues raised in Defendants' motion to dismiss involving the Rooker-Feldman doctrine were complex, even though ultimately irrelevant. Plf's Fee Memo. at section IV.2. Plaintiff's FDCPA claims were not technical, but substantive and serious ones involving the interpretation of explicit and implicit language used in Defendants' collection letters and the calculations of amounts stated therein. *Id.* Even if they were straightforward, the fact that a case is straightforward is not grounds to *reduce* a lodestar award. *Id.* Rather, it is a factor for increasing a lodestar award, something Plaintiff is not seeking here.

### 3. *The Customary Fee*

Plaintiff has submitted the declarations of two local attorneys in support of her rate. Once

---

[9] As the burden of proof is on a plaintiff to both prosecute and prove his or her case, it would not be unusual for a plaintiff's counsel to perform more work than a defendant's counsel.

12

Plaintiff has presented supporting evidence of the reasonableness of her counsel's rate, the burden is on Defendants to present specific evidence that a lower amount is appropriate. *Id.* at IV. Defendants have not met this burden and have presented no credible testimony that the rate Plaintiff's counsel is seeking is not reasonable. Defendants have submitted only their counsel's affidavit. O'Connor Affid. ¶ 13. Defendant's counsel's own opinion of the rate sought by Plaintiff's counsel is obviously biased and not sufficient evidence of a what is a reasonable rate under the circumstances. In addition, as pointed out *supra* at II.C, Defendants' counsel submits no real billing rates other than the discount rate he is charging Defendants in this case.

Plaintiff submits that her counsel's expertise and experience has more in common with Attorney John Roddy's than with Defendant's counsel's. Defendants even admit that Plaintiff's counsel and Attorney Roddy "are engaged in the same legal business representing the same class of claimants." Def's Opp. p.11. The court may not reduce the established market rate by some factor that it believes accounts for differences between large firms and small firms. Lawyers of common expertise and experience in the same market are entitled to the same rate. *Id.* at III.A. Again, Defendants have not presented any authority to dispute this.

Defendants' unwarranted attacks on Attorney Roddy's declaration are discussed *supra* at II.B.2. Defendants attack both Attorney Roddy's and Attorney Smith's declarations on the additional ground that they lack familiarity with this particular litigation. This attack is misplaced, however. Plaintiff has submitted the declarations as support for the reasonableness of her counsel's hourly rate. This is based on the declarants' familiarity with Plaintiff's counsel's qualifications and experience and the billing rates in the area of lawyers with similar qualifications and experience. The Roddy and Smith declarations provide support for Plaintiff in this area. Defendants submit no authority, nor is there any

of which Plaintiff is aware, that requires such declarants to be familiar with the litigation at issue. Moreover, this would be a burdensome requirement to impose on declarants.

### 4. *The Contingency Nature of the Fee*

Defendants' arguments aimed at the contingency nature of the Plaintiff's counsel's fee here turns this *Johnson* factor on its head. The fact that a plaintiff's counsel accepts a contingency fee in the case is not a reason to reduce the rate; it is a positive, not a negative factor. The contingency nature of a fee does not render it "fictional," as Defendants contend. Defs' Opp. p.7. It is a rate Plaintiff's counsel's clients agree to pay and do pay when a case is final, whether by settlement or court-ordered fee award. Because Plaintiff's counsel must wait to be paid, while Defendants' counsel is billing and being paid as the case progresses, there is an added time value to the rate to which Plaintiff's counsel is entitled. Therefore, a plaintiff's counsel generally should be compensated for all time in the case at the rate then-current when the fee petition is decided. *See* Plf's Fee Memo. at III.A; *see also Gates v. Deukmejian*, 987 F.2d 1392 (9th Cir. 1992); *Massachusetts Dept. of Public Health v. School Comm. of Tewksbury*, 841 F. Supp. 449, 458 (D. Mass. 1993). Plaintiff's counsel is currently charging individual clients in cases of this nature $325 per hour and has been doing so since early March, 2005. Rosmarin 2d Decl. ¶ 22. Although most of Plaintiff's counsel's fee agreements are on a contingency basis, her hourly clients pay the same rate. *Id.*

### 5. *The Amount Involved and Results Obtained*

Contrary to Defendants' assertions in this regard, the amount of the judgment accepted by Plaintiff is hardly "nominal." It is nearly the full maximum amount of statutory damages available under the FDCPA, plus attorney's fees. Because the statute itself limits damages, the amount of damages awarded does not justify a reduction in the lodestar amount. Plf's Fee Memo. at IV.8. The First

14

Circuit rejects "proportionality" as the basis for a fee award in cases such as this and fee awards in civil rights and consumer protection matters regularly exceed the plaintiff's recovery. *Id.* at IV.8 and V. Defendants have submitted no authority to the contrary.

### 6.   *The Attorney's Experience, Reputation and Ability*

Plaintiff has already discussed this factor at considerable length *supra* at II.B.1 and III.B.3. Plaintiff has submitted not only her counsel's declarations on this matter, but also the declarations of another respected consumer law practitioner as well as that of a Massachusetts uniform law commissioner and partner in one of Boston's largest firms. Defendants have submitted nothing but their own counsel's biased affidavit along with their unfounded denigrations of Plaintiff's counsel and her experience.

### C.   **Plaintiff Is Entitled to Fees for Work in Connection with Her Fee Petition**

This area also has been previously covered. *See* Plf's Fee Memo. at VI. Defendants' objections to Plaintiff's fees in connection with her fee petition are based on speculation. *See* discussion *supra* at II.B.3 and III.B.3. Fees for this work should be compensated at Plaintiff's counsel's full hourly rate, as requested. Plaintiff's counsel did not include any clerical work in her time entries, such as the actual assembly of the time records. Much of the time spent in support of Plaintiff's fee petition was spent drafting legal memoranda. This is normal, legal, not clerical work. Other time was spent thoroughly going through fee entries, in the exercise of billing judgment. This also is not clerical work and could only be done by the attorney. Indeed, Defendants are the beneficiaries of Plaintiff's counsel's substantial efforts in this regard.

### D.   **An "Across-the-Board" 10% Reduction Is neither "Standard" nor Required**

Plaintiff's counsel has already applied a reduction of approximately 29%. Rosmarin Decl. ¶ 11.

The cases cited by Defendants are not authority for requiring the court to apply a 10% fee reduction in all cases, much less under these circumstances. In fact, one of the cases Defendants cite specifically rejects the 10% across-the-board fee reduction Defendants espouse. *Gates v. Deukmejian*, *supra*. Another applies a *five* percent reduction, based on "evidence that the specific staffing decisions in [that] case were made without a focus on economic consideration or judgment about billing." *Massachusetts Dept. of Public Health v. School Comm. of Tewksbury*, 841 F. Supp. at 459 (D. Mass. 1993). No such evidence has been presented in this case and Plaintiff's counsel has already exercised a great degree of billing judgment.

## CONCLUSION

Defendants' spurious opposition to Plaintiff's fee petition has required the expenditure of more time to address and correct its fabricated "facts," false presumptions and irrelevancies. Defendants' vigorous defense, however, ultimately increases their liability for attorney's fees. Plaintiff will be submitting shortly an addendum to her counsel's time records. Plaintiff submits that her fee application is reasonable in time expended and amount requested. She respectfully submits that, for all the above reasons, the Court should award the Plaintiff all of her reasonable attorney's fees as requested.

> Respectfully submitted,
>
> s/Yvonne W. Rosmarin
> Yvonne W. Rosmarin  BBO #566428
> Law Office of Yvonne W. Rosmarin
> 58 Medford Street
> Arlington, MA 02474
> 781-648-4040