UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LINDA FLINT EDGE,<br>    Plaintiff,<br><br>v.<br><br>NORFOLK FINANCIAL CORPORATION<br>and DANIEL W. GOLDSTONE,<br>    Defendants. | CIVIL ACTION NO. 04-12134 DPW |

**DEFENDANTS' MOTION FOR LEAVE
TO FILE BRIEF SURREPLY, AND SURREPLY**

INTRODUCTION

  Plaintiff's counsel filed an excessive fee petition which the defendants opposed. With the Court's permission, plaintiff's counsel then filed a lengthy reply and second affidavit. The reply materials consist largely of misleading, duplicative, and otherwise improper argument. Accordingly, pursuant to local rule 7.1 and the inherent authority of this Court to regulate matters before it, the defendants seek leave to file the following brief surreply.

ARGUMENT

  In response to the reply memorandum and second affidavit filed by plaintiff's counsel Yvonne Rosmarin, the defendants make the following points in surreply:

  A. <u>The Reply Memorandum</u>

  1. Plaintiff's counsel <u>concedes</u> an important point made by the defendants in opposition to the fee petition -- that the defendants offered the plaintiff the opportunity to be <u>fully released</u> from the underlying state court judgment of nearly $2,000, but plaintiff's counsel rejected the offer <u>without counter</u>. (Reply Memo. at 2)

2.     Plaintiff's counsel fails to offer a reasonable explanation -- other than her desire to enlarge her fee claim -- as to why she rejected the defendants' opening offer without counter. She says that she had "no way to guess" what more the defendants would have offered, and also that the parties were too far apart because her estimated attorneys' fees at that time were 5 to 6 times the amount of the judgment, or somewhere in the $8,000 to $10,000 range. (Reply Memo. at 2) This explanation makes no sense. If plaintiff's counsel wanted to know how high the defendants were willing to go to settle this case, all she had to do was counter their offer. The further notion that plaintiff's counsel perceived the parties as being too far apart to warrant discussion is, quite frankly, unbelievable. The defendants had made an offer with a rough value of $2,000. Counsel's fee claim, which she doubtless would have compromised, was in the $8,000 to $10,000 range. In the circumstances, no thinking attorney concerned with her client's best interests could have considered the parties too far apart for further discussion.

3.     Plaintiff's counsel says she did counter the defendants' offer weeks later on January 31 by demanding $14,000. (Reply Memo. at 3) Not so, as counsel's own billing records confirm. The $14,000 demand was only for purposes of satisfying the requirement of a demand by the plaintiff. (Counsel's January 28 time entry reports: "Assess appropriate amount to recommend to client as a L.R. 16.1(c) settlement offer as required by scheduling order.") As such, the demand was not a response to the defendants' offer at all. More to the point, it was not a good faith proposal in any event, particularly because of the early stage of the matter and because the defendants had filed a well-supported motion to dismiss.

4.     Plaintiff's counsel falsely implies that the defendants' offer of judgment for $1,000 (plus interest and costs) covers the full potential value of the plaintiff's alleged claim but for $150. (Reply Memo. at 4) In fact, the plaintiff has alleged emotional distress and would

2

have been entitled to damages on that claim in excess of $1,000 had she been able to carry her burden of proof. By accepting the defendants' $1,000 offer of judgment, the plaintiff and her attorney are walking away from $150 in costs, prejudgment interest, and emotional distress damages. (The plaintiff's implicit concession, of course, is that the emotional distress claim was a makeweight.)

5. Plaintiff's counsel claims that she has never before dealt with <u>Rooker-Feldman</u> or preclusion issues in her practice. (Reply Memo. at 5; Second Dec. at ¶ 24) If that is true, counsel's experience and practice are more limited than the defendants had supposed. <u>Rooker-Feldman</u> and various preclusion/estoppel doctrines are <u>common defenses</u> in FDCPA actions like this one, as standard FDCPA texts -- including one published by counsel's former employer the National Consumer Law Center -- acknowledge and discuss. <u>See</u>, <u>e.g.</u>, <u>Fair Debt Collection</u>, § 7.5 (Nat. Cons. Law Center, 4th ed. 2000) Also, the reporters are dense with FDCPA cases in which these defenses have been raised. <u>See</u> Memorandum in Support of Defendants' Motion to Dismiss/For Summary Judgment. That plaintiff's counsel may never have dealt with these issues before is revealing.

6. Plaintiff's counsel wrongly suggests that the rate-related information provided by defense counsel is not what it purports to be. (Reply Memo. at 7-8) She is wrong. The average rates referred to by defense counsel are just that: average <u>billing rates</u> on hourly and contingent fee cases. They are <u>real</u> rates at which Peabody & Arnold LLP bills and is able to operate profitably, rates that are far below the fictional rate sought by plaintiff's counsel here. Peabody & Arnold's average <u>collected</u> rates are <u>lower</u> than its billing rates.

7. Plaintiff's counsel falsely purports to dispute certain facts (Reply Memo. at 8) that <u>already are established as a matter of record</u> in this Court and in the Small Claims Court -- that

3

the plaintiff <u>acknowledged</u> her indebtedness in the Small Claims court, <u>agreed</u> to a payment plan, and <u>agreed</u> to the entry of judgment against her. These facts are all well and truly established by record materials that were before this Court in connection with the motion to dismiss/for summary judgment. Moreover, the plaintiff herself <u>reaffirmed</u> these facts on February 15, 2005 at a hearing in the Small Claims Court on the plaintiff's motion to vacate the Small Claims judgment, which was filed <u>after</u> plaintiff's counsel received the Motion to Dismiss/For Summary Judgment in this case.

Defense counsel John O'Connor attended that hearing on behalf of Norfolk Financial Corporation ("Norfolk"). The plaintiff was there with her attorney in <u>this</u> case, Yvonne Rosmarin, and her <u>separate</u> attorney for <u>the small claims case</u>, Neil Berman. In the presence of her <u>two</u> lawyers and defense counsel, the plaintiff had a colloquy with Assistant Clerk Magistrate Callahan. He reminded her that he had been the clerk magistrate who presided over the initial proceeding in which she acknowledged her liability, her responsibility to make payments, and the fact that judgment would enter against her. He confirmed with her that those proceedings had occurred as reflected by the Court's file and the representations by Norfolk. During this colloquy, the plaintiff in open court <u>agreed</u> with the clerk magistrate, <u>reaffirmed</u> her liability to Norfolk, and thus <u>reaffirmed</u> the facts that are part of the Small Claims record. On the basis of that colloquy and the plaintiff's admissions, Assistant Clerk Magistrate Callahan denied the motion to vacate the Small Claims judgment.

<u>All</u> of this happened in the presence of plaintiff's counsel. She should not be heard to deny it now. The plaintiff's debt to Norfolk is <u>undisputed</u>, and it remains outstanding.

4

8.   Pages 9-16 of counsel's reply memorandum are virtually a verbatim rehash of points previously made in counsel's original fee petition. There is no good cause for this restatement.

B.   <u>The Second Rosmarin Affidavit</u>

1.   Plaintiff's counsel <u>concedes</u> that, as alleged by the defendants, she has a regular referral relationship with Attorney John Roddy, who has submitted an affidavit in support of her fee petition. (Second Dec. at ¶ 2)

2.   Plaintiff's counsel apparently is willing to breach the attorney client privilege in defending her fee petition. In Paragraphs 7 and 17 of her second affidavit, counsel divulges the substance of attorney/client communications.

3.   After the defendants filed their Motion to Dismiss/for Summary Judgment, this Court scheduled a hearing for March 24. Both counsel assumed that the Court would hear argument on the motion at that time and prepared accordingly. As it turned out, on March 24 the Court asked the parties to return on May 4 so that the <u>Court</u> had an opportunity to become familiar with the parties' submissions. Plaintiff's counsel does not deny any of this. (Second Dec. at ¶ 11) This is why it was unreasonable for plaintiff's counsel to spend a number of additional hours prior to the <u>second</u> hearing preparing to argue the defendants' motion.

4.   Plaintiff's counsel represents that defense counsel told her that he had provided all documents "he thought were relevant" to plaintiff. (Second Dec. at ¶ 13) This is untrue. Defense counsel told plaintiff's counsel that he had produced "everything" he had. This remark was made in the context of a larger point defense counsel was attempting to impress on plaintiff's counsel -- that written discovery requests were a waste of time. As we now know, plaintiff's counsel <u>ignored</u> this advice and immediately wasted many hours preparing various

5

(useless) discovery requests, the only effect of which was to inflate counsel's bill. She should not be compensated for that valueless time.

5. In her original fee petition and again in her reply materials, plaintiff's counsel has attempted unfairly to malign the defendant Daniel Goldstone by referring to a prior suit against Goldstone and other defendants -- <u>Martin v. Sands</u>, 62 F. Supp. 2d 196 (D. Mass. 1999). (Second Dec. at ¶ 15) Some context is in order. In that suit two acknowledged debtors purporting to represent a class sued Goldstone's former law firm and other defendants alleging FDCPA violations. On the plaintiff's side, the suit was handled and all of the regular legal work was done by Chicago counsel. Rosmarin served in a limited role as local counsel. There was extensive discovery. Goldstone testified truthfully and in good faith at his deposition. Rosmarin's current allegations to the contrary reflect narrow personal opinions as to which there is no evidence. After discovery, this Court (Tauro, J.) denied the plaintiffs' motion to certify their alleged class. Thereafter, plaintiff's counsel essentially lost interest in the case. The matter settled for a nuisance payment, the lion's share of which came from Goldstone's co-defendants. The named plaintiffs received a small fraction of the total settlement proceeds, with the bulk going to the plaintiffs' attorneys. Neither Goldstone nor his former firm were ever found liable.

6. Rosmarin's nuanced discussion of her current rate is entirely consistent with the defendants' contention that her rate is fictional because she does not work for clients paying on an hourly basis at a rate of $325, or anything close to it. (Second Dec. at ¶ 22) If plaintiff's counsel had to work on a "real" hourly basis, she would be unable to earn anywhere near $325 per hour. The rate sought by plaintiff's counsel is unreal and unreasonable.

7. Finally, in a <u>non sequitur</u>, plaintiff's counsel deceptively implies that she requested an extension of time to file her response to Defendants' Motion to Dismiss/For Summary Judgment

6

and defense counsel refused. (Second Dec. at ¶ 26) The truth is different. Plaintiff's counsel called defense counsel and asked for an extension, citing the two days that plaintiff's counsel allegedly had lost due to the Thanksgiving holiday. Defense counsel agreed to a one-week extension. Plaintiff's counsel wanted more time and chose to file a motion seeking it. The defendants did not oppose the motion and it was granted. Any contrary implication by plaintiff's counsel is false, and petty. And the time spent on the motion was unjustified and unreasonable.

## CONCLUSION

From behind the sound and the fury of attorney Rosmarin's reply memorandum and second affidavit, some important undisputed facts emerge: (1) the plaintiff <u>is</u> a habitual debtor who does <u>not</u> deny that she is indebted to Norfolk; (2) plaintiff's counsel <u>did</u> refuse to negotiate with the defendants in good faith when they made a substantial offer of settlement that was <u>more</u> generous than the judgment plaintiff's counsel ultimately told her client to accept; (3) because of counsel's conduct, the plaintiff now has a <u>net liability to Norfolk</u> of approximately $1,000 that she would <u>not have had otherwise;</u> (4) plaintiff's counsel has positioned <u>herself</u> to request fees of approximately $22,000; and (5) the defendants are in the bizarre position of having to respond to an exorbitant fee claim arising from allegations that letters sent to collect an <u>acknowledged and adjudicated</u> debt were somehow harmful to the <u>admitted</u> debtor. There is something profoundly wrong with this picture.

The fee petition is unreasonable. Plaintiff's counsel should be awarded no more than a nominal fee. She should receive nothing for time spent preparing her redundant, self-serving reply memorandum and second affidavit.

          NORFOLK FINANCIAL CORPORATION and
          DANIEL W. GOLDSTONE

          By their attorney,

           /s/ John J. O'Connor
          John J. O'Connor
          BBO # 555251
          PEABODY & ARNOLD LLP
          30 Rowes Wharf
          Boston, MA  02110
          (617) 951-2100

Dated: June 24, 2005.

## **VERIFICATION**

I, John J. O'Connor, hereby depose under oath and state that all of the factual representation made in this motion are true and accurate to the best of my knowledge.

           /s/ John J. O'Connor

## **LOCAL RULE 7.1 CERTIFICATION**

I, John J. O'Connor, hereby certify and attest that I communicated with the office of plaintiff's counsel Yvonne Rosmarin by voice mail and facsimile on June 23 in compliance with Local Rule 7.1.

           /s/ John J. O'Connor

## CERTIFICATE OF SERVICE

      I hereby certify that on this date I served a copy of the attached motion by first class mail on the following:

> Yvonne W. Rosmarin, Esq.
> 58 Medford Street
> Arlington, MA  02474

Dated: June 24, 2005             /s/ John J. O'Connor

617329_1
13906-90990