UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


LINDA FLINT EDGE,⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀Plaintiff,⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀⠀⠀CIVIL ACTION NO.
⠀⠀⠀⠀⠀v.⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀⠀⠀04-12134-DPW
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
NORFOLK FINANCIAL⠀⠀⠀⠀⠀)
CORPORATION and DANIEL W.⠀⠀)
GOLDSTONE,⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀Defendants.⠀⠀⠀⠀)
_____)


MEMORANDUM AND ORDER
August 29, 2005

Plaintiff Linda Flint Edge has petitioned the court pursuant to Fed. R. Civ. P. 54(d) and 15 U.S.C. §§ 1681n, 1681o for attorney's fees in the amount of $27,137.50.  For the reasons stated below, that petition will be granted but for an amount substantially less than that requested.

**I. Background**

Plaintiff fell behind in making payments on a credit account she held with Providian Bank.  Norfolk acquired the debt from Providian and sent plaintiff four letters between September and December 2003.  Never receiving payment, defendants filed suit in Boston Municipal Small Claims Court in November of that year seeking judgment in the amount of the debt plus costs.  A hearing, presided over by a clerk-magistrate, was set for January

8, 2004.  On that day, the parties settled their dispute and submitted to the court an Agreement for Judgment declaring that a payment by plaintiff of $1,080.00 by March 1, 2004 would satisfy the debt.  On March 1, 2004, plaintiff called Norfolk because she could not pay the settlement in a timely manner, but offered to pay $40 a month toward the judgment.  Defendants assert that they have received no payments.

Plaintiff brought an action in this court on October 8, 2004 seeking recovery for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, et seq.  Defendants filed a motion to dismiss or, alternatively, for summary judgment.  While that motion was pending, defendants offered to forgive plaintiff's debt in exchange for plaintiff dropping her federal suit.  Plaintiff rejected this offer.[1]

I denied defendants' motion on May 4, 2005; and they filed an offer of judgment pursuant to Fed. R. Civ. P. 68 on May 10, 2005.  Therein, defendants agreed to an entry of judgment in the amount of $1,000.00, including interest and costs, in addition to reasonable attorney's fees determined by the court.  Plaintiff accepted that offer on May 17, 2005 and judgment entered the following day.  After taking into account the $1,000 judgment, plaintiff still owes a debt to Norfolk Financial of approximately

---

[1]The parties dispute whether, if at all, attorney's fees were a part of the discussions.  It seems clear, however, that fees were not a formal part of any settlement offer.

$1,000.

On June 1, 2005, plaintiff filed a motion for attorney's fees, seeking $22,197.50. Defendants opposed that motion; plaintiff replied; and defendant filed a sur-reply. Plaintiff also supplemented her request to account for the time spent litigating the fee question, adding an additional $4,940 to her request. As might be expected, plaintiff's attorney contends that the $27,137.50 total figure is eminently reasonable, while defendant argues that "no more than a nominal fee" should be awarded. Neither party is correct. Cf. Brewster v. Dukakis, 3 F.3d 488, 494 (1st Cir. 1993) ("While we anticipate that all the parties will be displeased, the fact that a fee award leaves both payer and payee somewhat sullen is often a sign of fairness all around.").

## II. Discussion

### A. Lodestar Calculation

The dispute here turns on the reasonableness of the fees requested, not on whether plaintiff is entitled to fees. Pursuant to § 1692k(a)(3) of the FDCPA,

> any debt collector who fails to comply with any provision of this title . . . with respect to any person is liable to such person in an amount equal to the sum of--
> . . .
> (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court. . . .

See Silva v. Nat'l Telewire Corp., 2001 U.S. Dist. LEXIS 20717,

at *4 (D.N.H. Dec. 12, 2001)(noting that "[a]n award of
reasonable attorneys' fees to a prevailing plaintiff is
mandatory" under the FDCPA); Baez-Martinez v. PMS, Professional
Multiservices, Inc., 1997 U.S. Dist. LEXIS 3314, at *3 (D.P.R.
Feb. 6, 1997) ("Under the FDCPA attorney's fees are mandatory,
except in the most exceptional circumstances."); see also de
Jesus v. Banco Popular de Puerto Rico, 918 F.2d 232, 233-34 (1st
Cir. 1990) (applying the attorney's fee provision of the Truth-
in-Lending Act where it was "evident that fees may be denied a
successful plaintiff only in the most unusual of
circumstances").[2] Cf. Zagorski v. Midwest Billing Servs., Inc.,
128 F.3d 1164, 1166 (7th Cir. 1997) (award of fees mandatory
under FDCPA and rejecting a de minimus exception).

In calculating a reasonable rate, courts generally apply the
"lodestar method." See Coutin v. Young & Rubicam Puerto Rico,
Inc., 124 F.3d 331, 337 (1st Cir. 1997) (characterizing the
lodestar method as "strongly preferred"); Lipsett v. Blanco, 975
F.2d 934, 937 (1st Cir. 1992) ("Ordinarily, the trial court's
starting point in fee-shifting cases is to calculate a lodestar .
. . ."); Ackerley Communications of Mass., Inc. v. Somerville,
901 F.2d 170, 171 n.4 (1st Cir. 1990) ("Although we do not

_____

[2]See de Jesus, 918 F.2d at 233 ("Whether the jury also found
liability based on the other consumer protection acts is, in any
event, inconsequential because those statutes have virtually
identical provisions regarding the award of attorney's fees.")
(citing in a footnote both the Fair Credit Reporting Act and the
FDCPA).

perform a line-by-line review of Ackerley's request, our starting point in calculating an appropriate fee was the 'lodestar' approach . . . ."); see also Spegon v. The Catholic Bishop of Chicago, 175 F.3d 544, 550 (1st Cir. 1999).  "This approach contemplates judicial ascertainment of 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate' as the starting point in constructing a fee award." Coutin, 124 F.3d at 337 (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)).

### 1. Reasonable Hourly Rate

Plaintiff seeks a rate of $325 per hour for the work of her attorney in this case.  Plaintiff's attorney, in substantiating the reasonableness of that hourly rate, submitted an affidavit detailing her experience and prior rates.  Therein, she notes that "[i]n the past, [her] clients who were billed hourly have paid $275.00 per hour" and that "on June 3, 2004, the Court awarded [her] attorney's fees on a motion to compel discovery" and "found that the hourly rate sought at that time, $275.00, was not unreasonable."  (Rosmarin Aff. ¶ 13-14.)  The only apparent basis provided for an increase of $50 per hour is that she took the instant case on a contingency.[3]

---

[3]In Coutin, the First Circuit made it clear that the "trial court retains the authority to adjust the lodestar after initially computing it -- but it must do so in accordance with accepted principles."  124 F.3d at 337.  For a structure in applying such principles, the First Circuit "has embraced . . . factors" limned by the Fifth Circuit in Johnson v. Georgia

Relying on the affidavit of plaintiff's attorney, I will therefore use $275 as the starting point for the requested hourly rate in this case.  Even after reducing the request by $50 per hour, defendants would still take issue with the rate, averring that their counsel charged only $175 per hour.  They also point to other factors, such as the modest judgment amount and rejection of a settlement offer, as bases for reducing the award. Such factors will be considered as factors warranting adjustment of the lodestar, but say little at the initial step of calculating a reasonable hourly rate "prevailing in the community for similar work."  Maceira v. Pagan, 698 F.2d 38, 40 (1st Cir. 1983) (quoting Copeland v. Marshall, 641 F.2d 880, 892 (D.C. Cir. 1980) (en banc)).

Here, Ms. Rosmarin has submitted that she has charged $275 per hour in similar cases.  She has also submitted affidavits of peers in the legal profession who claim that her request for $325 is reasonable.  Recognizing that "[t]he attorney's actual billing

---

Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974), including "the nature of the fee (fixed or contingent)."  Coutin, 124 F.3d at 337.  But in the context of a fee-shifting statute, the First Circuit in Lipsett made it clear that the contingency of a fee could not be considered.

> At the time this case was decided below, this circuit allowed enhancement for risk of nonpayment in exceptional contingent-fee cases if certain criteria were met.  In its most recent pronouncement on the subject, however, the High Court has effectively foreclosed such enhancements, ruling that "enhancements for contingency [under fee-shifting statutes] is not permitted."

Id. at 943 (quoting City of Burlington v. Daque, 505 U.S. 557, 567 (1992)).

rate for comparable work is 'presumptively appropriate' to use as the market rate," <u>People Who Care v. Rockfrod Bd. of Educ., Sch. Dist. No. 205</u>, 90 F.3d 1307, 1310 (7th Cir. 1996) (citation omitted), and "[t]he next best evidence of an attorney's market rate includes evidence of rates similarly experienced attorneys in the community charge paying clients for similar work and evidence of fee awards the attorney has received in similar cases," <u>Spegon</u>, 175 F.3d at 555, I will use -- despite defendants resistance to reliance on the submitted affidavits -- the figure of $275 per hour in the calculation of the lodestar.[4] <u>Cf.</u> <u>Brewster</u>, 3 F.3d at 492 ("The standards governing hourly rates applicable to shifted legal fees are hardly models of precision.").

### 2. <u>Hours reasonably expended</u>

The next step in calculating a lodestar figure is determining the number of hours reasonable expended in pursuit of the judgment.  Ms. Rosmarin sought payment in her original petition for 70 hours of work.  She subsequently added an additional 15.2 hours for her efforts in attaining a fee award.

Defendants take issue first with 8.7 hours plaintiff's attorney claims to have spent preparing a deposition notice and written discovery requests that were never served.  According to

---

[4]I will reduce the rate for the time spent drafting and litigating the fee petition.  I have decided, however, to address that issue below in discussing the reasonable amount of time spent on these endeavors.

defendants' attorney, this work occurred subsequent to
defendants' voluntary disclosures and his notifying plaintiff's
counsel that all discoverable documents had been produced.
(O'Connor Aff. ¶ 9.)  Although plaintiff argues that "specific,
thorough discovery was warranted in this case," (Pl's Reply at
6), based on her prior experience with the individual defendant,
she does not address Mr. O'Connor's argument that she exerted
this substantial effort after assurances that the materials would
be voluntarily provided.  I do not believe that it was
unreasonable for plaintiff's attorney to begin preparing
discovery materials, but do believe that the facts of this case
and proffers by the attorneys support a finding that the hours
claimed for discovery preparation are not entirely reasonable.  I
will, therefore, reduce the amount by roughly half to 4.4.

Defendants direct the court next to the 19.6 hours Ms.
Rosmarin bills for legal research and review of decisional law,
contending that it constitutes an unreasonable amount of time for
an attorney with her claimed experience.[5]  The defendants filed a
fully-briefed motion to dismiss raising the <u>Rooker-Feldman</u>
doctrine, a complex area of the law, together with other
purported grounds for dismissal.  While an attorney working in

---

[5]I note by contrast that when arguing for a reduced rate,
defendants were quick to question Ms. Rosmarin's credentials.
But once they turn to the matter of the appropriate time spent on
legal research, they do not hesitate -- for purposes of
contending it took her too long to complete the tasks -- to adopt
Ms. Rosmarin's description of her skill and experience.

this field certainly should not need to start from square one in each action, see Foley v. City of Lowell, 948 F.2d 10, 20 (1st Cir. 1991),[6] this case required research and case review beyond mere boilerplate. I cannot find that nearly 20 hours for such efforts is unreasonable. I do, however, find defendant's argument that the 3.1 hours to prepare for the May 4, 2005 hearing was duplicative -- if not of the March 24, 2005 scheduling conference -- than of the nearly 20 hours of research and case review conducted to respond to defendants' motion. I will, therefore, reduce the hours by an additional 3.1. Cf. Gay Officers Action League v. Puerto Rico, 247 F.3d 288, 295 (1st Cir. 2001) (noting that "[i]n implementing this lodestar approach" a judge must "subtract[] duplicative, unproductive, or excessive hours").

Defendants also argue that the 1.5 hours spent drafting the complaint is unreasonable because it was "effectively a carbon copy" of a prior complaint. (Def.'s Opp. at 10 (emphasis in original).) Plaintiff's attorney denies this without explanation. Upon review, I believe it warranted to reduce the amount from 1.5 to .5 hours. See Evangelist v. Fidelity Mgmt. & Research Co., 1986 U.S. Dist. LEXIS 20993, at *13 (D. Mass. Aug. 29, 1986) ("Although the reuse of earlier work product is

---

[6]The Foley court pointed out that "[a]ccepting the hourly rates at face value, the court could rightfully adjust the hours to reflect that expert counsel, worthy of such rates, might need less time." Id., 948 F.2d at 20.

entirely appropriate, the time charged must reflect such assistance.").

Finally, defendants believe plaintiff should receive no fee for the time spent drafting the fee petition (7.8 hours). Plaintiff is entitled to a fee for the time, see Brewster, 3 F.3d at 494, but I find the hours claimed to be unreasonable. In addition, plaintiff has supplemented the time records to include the efforts made subsequent to the filing of the petition, adding 15.2 billable hours to the total. That number will also be reduced.

The fee petition was a two-page document filed with the court. Attached to it, Ms. Rosmarin supplied a declaration, the vast majority of which appears to be information she would have previously drafted or had readily available for purposes of seeking fees, particularly in light of her claimed experience in this, her area of expertise. She also filed her timesheets, which appear to have been computer generated; an order granting fees in a prior case; and two brief declarations by attorneys supporting her quoted rate. In my view, that does not reasonably constitute 7.8 hours of legal work on behalf of one's client, and, consequently, reduce it to 2.0.

I turn my attention now to the 15.2 hours of work spent on the fee question after filing the petition. The vigor with which both parties have fought the attorney's fees question ignores the Supreme Court's warning that a "request for attorney's fees

should not result in a second major litigation."  <u>Hensley</u>, 461
U.S. at 437; <u>Brewster</u>, 3 F.3d at 493 ("Put bluntly, fee disputes,
unlike Jack's beanstalk or Pinocchio's nose, cannot be permitted
to grow and grow and grow.").[7]  Defendant cannot persuasively
question the need for plaintiff to reply to their opposition,
however, given that they press the court to award only nominal
fees in this, a successful FDCPA action.  But, plaintiff's
attorney, by requesting a rate exceeding any she has before and
responding to defendants' opposition with parallel strident
arguments,[8] should not reap benefits from the self-perpetuating
exercise.  If defendants had argued for a substantially reduced,
but reasonably compensatory fee and plaintiff had insisted on
wracking up the hours in arguing the point she has here, I would
have slashed the 15.2 hours right to the bone.  Under the present
circumstances, I will permit plaintiff to recover for 7 hours of
such work.

I also believe the rate should be reduced for the time spent
on the original fee petition and the subsequent briefing of the
matter.  As far as the original fee petition is concerned, not
only does the nature of that work call into question the number
of hours claimed but also the rate charged for the efforts.  "To

---

[7]<u>Cf.</u> <u>Hensley</u>, 461 U.S. at 442 (describing appeals of
attorney's fee awards as "one of the least socially productive
types of litigation imaginable") (Brennan, J., concurring in part
and dissenting in part).

[8]The fee dispute devolved into a near personal brouhaha.

the extent the work involved 'little more than documenting what a lawyer did and why he or she did it, it may fairly be compensated at a reduced rate.'" <u>Silva</u>, 2001 U.S. Dist. LEXIS 20717, at *16 (quoting <u>Brewster</u>, 3 F.3d at 494).  I will, therefore, compensate plaintiff's attorney at a rate of $100 per hour for the time spent on the original fee petition.  The work done in replying to defendants' opposition certainly required legal argument and research, but also was substantially an act of continued explanation of time spent on matters.  I, therefore, will reduce the rate for that work to $137.50.

    3. <u>Lodestar figure</u>

    In sum, the lodestar figure will comprise 50.4 hours at $275 per hour, 3.4 hours at $137.50 per hour,[9] 2 hours at $100 per hour, and 7 hours at $137.50 per hour.  The resulting lodestar figure is $15,490.00.

**B. Adjustments to the Lodestar**

    The First Circuit has "embraced the <u>Johnson</u> factors for use in sculpting fee awards":

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney(s) due to acceptance of the case; (5) the customary fee; (6) the nature of the fee (fixed or contingent); (7) the time limitations imposed by the client of the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney(s); (10) the 'undesirability' of the

---

[9]The billing records quoted a one half fee for 3.4 hours of travel to and from court appearances.

case; (11) the nature and length of the professional
relationship with the client; and (12) the size of awards in
similar cases.

Coutin, 124 F.3d at 337 n.3; see id. ("[T]he trial court retains

the authority the adjust the lodestar after initially computing

it -- but it must do so in accordance with accepted

principles.").  Although the cases divide the analysis between

lodestar calculation and these subsequent considerations, there

is clear -- and often confusing -- overlap.  Cf. Lipsett, 975

F.2d at 942  ("In [Pennsylvania v. Delaware Valley Citizens'

Council for Clean Air, 478 U.S. 546 (1986)], Justice White wrote

that 'the lodestar figure includes most, if not all, of the

relevant factors constituting a "reasonable" attorneys' fee . . .

.'").  In sum, however, and "in the absence of special

circumstances, the court must evaluate the data submitted by the

fee-seeker, compute a lodestar, consider the totality of the

adjustment factors approved by Congress and the Court, and make

specific, reasoned judgments if it is to arrive at a reduced fee

award."  Coutin, 124 F.3d at 340.  In attempting to do so, I have

arrived at a lodestar figure of $15,490.00, and now must evaluate

whether that is a reasonable fee in this case.

Here, I focus most intently on the disparity between the

results obtained and the requested fee.  Although a fee award is

mandatory in this context, I still must exercise discretion in

calculating that fee.  As the Fourth Circuit has advised,

[i]t should be clear, then, that § 1692k does not mandate a

-13-

> fee award in the lodestar amount.  If the concept of
> discretion is to have any meaning at all, it must encompass
> the ability to depart from the lodestar in appropriate
> circumstances.  <u>Hensley</u> itself recognized that, in certain
> circumstances, an award in the lodestar amount may be
> excessive.  When "a plaintiff has achieved only partial or
> limited success," the district court, in calculating an
> appropriate fee award, "may simply reduce the award to
> account for the limited success." <u>Hensley</u>, 461 U.S. at 436-
> 37.

<u>Carroll v. Wolpoff & Abramson</u>, 53 F.3d 626, 629 (4th Cir. 1995).

<u>Cf.</u> <u>Coutin</u>, 124 F.3d at 340 (noting in a § 1988 context that

"while a judge may not automatically reduce a fee award in

proportion to a judgment that is significantly less than the

plaintiff sought, the judge can take that small judgment into

reasonable account in massaging the lodestar.").

    Properly incorporating the results obtained into analysis is

a nuanced affair.  As the First Circuit has recognized, "the term

'results obtained' has a variety of meanings.  It can refer to a

plaintiff's success claim by claim, or to the relief actually

achieved, or to the societal importance of the right which has

been vindicated, or to all of these measures in combination.  We

think that the last meaning is the best choice, and that, as a

consequence, all three types of 'results' potentially bear upon

the amount of an ensuing award." <u>Coutin</u>, 124 F.3d at 338.  The

analysis is further refined where, as here, Congress has mandated

a fee award, demonstrating a desire that cases be encouraged.

<u>Cf.</u> <u>id.</u> at 339 ("But though a meager damage award may be taken

into consideration, the Court has squarely disclaimed 'the

proposition that fee awards under § 1988 should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers.'") (quoting <u>Riverside v. Rivera</u>, 477 U.S. 561, 574 (1986)).

In that regard, the Seventh Circuit -- in the context of an FDCPA attorney's fee case -- summarized these considerations:

> [T]he Supreme Court has stated that "'the most critical factor'" in determining the reasonableness of the award "'is the degree of success obtained.'"  Success must be measured not only in the amount of the recovery but also in terms of the principle established and the harm checked.  In this regard, we note that our Chief Judge recently has written that "the cumulative effect of petty violations . . . may not be petty, and if this is right then the mere fact that the suit does not result in a large award of damages or the breaking of new . . . ground is not a good ground for refusing to award any attorneys' fees."  We also believe that this reasoning must be considered in determining the degree of success obtained in fixing the amount of the fee.  Finally, we also note that we have stated that, "in order to encourage able counsel to undertake FDCPA cases, as congress intended, it is necessary that counsel be awarded fees commensurate with those which they could obtain by taking other types of cases."  "Paying counsel in FDCPA cases at rates lower than those they can obtain in the marketplace is inconsistent with the congressional desire to enforce the FDCPA through private actions, and therefore misapplies the law."

<u>Zagorski</u>, 128 F.3d at 1166-67 (citations and footnotes omitted).

With these considerations in mind, I turn to the case before me prepared to weigh the result obtained in the context of the FDCPA fee-shifting paradigm and not as a mechanical comparison of the judgment to the lodestar.  <u>See</u> <u>Coutin</u>, 124 F.3d at 340.

Cases such as this, where fee shifting is mandatory, can place a plaintiff and her attorney in conflicting positions.

-15-

Here, it is undisputed that plaintiff turned down a settlement
offer while the motion to dismiss or, alternatively, for summary
judgment was pending that would have wiped her debt clean.  After
her case survived defendants' motion, she agreed to an entry of
judgment that leaves her in debt to defendants.  Although it is
not entirely clear on the present record what provisions, if any,
for attorney's fees had been included in the original settlement
offer, it certainly gives me pause that after succeeding on her
motion, the plaintiff agreed to an entry of judgment which
appears to place her in a worse position.  That entry of
judgment, however, triggers the attorney's fees provision of the
FDCPA.

    In sum, in this recounting, plaintiff, after all of her
attorney's efforts, still is in debt to defendants in an amount
not much less than her original debt.  Defendants, after
defending against a claim that resulted in an entry of judgment
for modest statutory damages in a case where plaintiff's case was
not on its face certain of success on the merits, is now faced
with a fee request outpacing the judgment by a factor of over
twenty.  This might on its face, as defendants present it,
warrant a substantial reduction in the lodestar.  But the record
is not so clear on this point.

    First, there is some dispute about the extent and nature of
the settlement offer.  Plaintiff's attorney avers that the offer
was limited to plaintiff's debt and did not explicitly provide

for an attorney's fee.  Defendants' counsel now submits that he
would have recommended such a provision and that a reasonable fee
could have been negotiated.  I cannot, on this record, make a
finding -- as defendants would have me do -- that it was in some
way unreasonable (in light of later, yet to be known events) for
plaintiff to turn down such an offer.  Nevertheless, at least as
far as the plaintiff herself is concerned, clearing the debt
would have placed her in what appears to be a better financial
position in relation to defendants than receiving -- either by
entry of judgment or after trial -- an award of statutory
damages.  Contrast Coutin, 124 F.3d at 341 ("In the case at bar .
. ., the defendant did not invoke Rule 68 and, in any event, the
judgment that the plaintiff obtained more than trebled the
highest settlement offer available to her.").

        There are, of course, other considerations at play which are
highlighted by plaintiff's attorney.  If I assume for the moment
that no provision was made for fees in defendants' settlement
offer, it does not strike me as unreasonable for plaintiff to
reject that offer.  Moreover, although defendants claim it was
not formally a counter-offer because it was made weeks later,
plaintiff did offer to settle for $14,000 on January 31, 2005 in
accordance with Local Rule 16.1.  Ms. Rosmarin had logged
substantial hours at that point and both parties still faced a
great deal of risk in moving forward with the litigation.  Ms.
Rosmarin contends that she repeated the same $14,000 offer even

-17-

after the denial of defendants' motion.

After that denial, agreeing to an entry of judgment cannot be said, as defendants now do, to be unreasonable.  There was a risk to proceeding to trial, especially where plaintiff may have at best hoped to receive statutory damages and, at worse, nothing.  Moreover, there is the public policy benefit realized from attaining a judgment against a defendant which cannot fully be captured by looking only at the dollar amounts.  Congress has sought to create an incentive for the realization of that benefit, cf. de Jesus, 918 F.2d at 235 (observing, in the context of the Truth in Lending Act, that it "must . . ., upon proper proof, award attorney's fees to a prevailing plaintiff sufficient to vindication the Congressional goal of creating 'a system of private attorneys general to aid in effective enforcement . . .'") (internal quotations omitted), and has provided a mechanism to pay attorneys for their professional assistance in attaining it.

In any event, defendants cannot place all the blame for extension of the litigation on plaintiff's doorstep; rejecting settlement offers placed them at risk to have a fee determined by the court in excess of that embraced by plaintiff's L.R. 16.1 offer.  And, if plaintiff had rejected the opportunity to have judgment enter, but instead proceeded to trial and ultimately prevailed for statutory damages, no doubt defendants would have argued that plaintiff's fee request was unreasonable in light of

-18-

that rejection.  In short, I cannot say that plaintiff's rejection of the settlement offer was an unreasonable choice at the time, particularly in light of the indications that the resistance to settlement for a fee-inclusive amount was, at the very least and at different times, mutual.

A related consideration is the amount of money at stake.  It should have been readily apparent to plaintiff's attorney that the potential for substantial damages in this case were extremely slim.  Therefore, there was reason to believe that the case would result in an award, at best, of statutory damages, a supposition borne out by plaintiff's ultimate agreement -- after defendants' unsuccessful motion to dismiss -- to an entry of judgment in the amount of the statutory damages.  I cannot find, however, for reasons already discussed, that plaintiff's attorney avoided clearly reasonable opportunities to limit costs in this action. Moreover, the decision later -- in the wake of plaintiff's own settlement offers -- to an entry of judgment appears to embrace the realization that pursuing the action to trial would simply be an opportunity to run up more fees while risking defeat for her client.

Nor do the other considerations a court is free to consider when calculating a fee require a reduction in the lodestar.  In particular, I find defendants' contentions to the effect that litigating this case did not require much in the way of unique research or advocacy unavailing.  Although the issues raised were

-19-

not entirely novel, they were certainly not so run of the mill as
to mandate a reduction in the lodestar, which of course already
embraces, to a degree, such considerations in the determination
of reasonable hours spent on the action.  See Foley, 948 F.2d at
19 ("Complexity is, at best, a relative term, the parameters of
which may lie to some extent in the mind of the beholder.").  I
also reject defendants' attempts to minimize the experience and
skill of Ms. Rosmarin.  While there is no basis to raise the
lodestar based on exceptional experience and skill in this realm,
see Lipsett, 975 F.3d at 942 (enhancements of lodestar are to be
rarely made), there is certainly no basis in the record to reduce
it on that score.

In short, although both parties have made dramatic arguments
regarding the nature of the action and their adversaries'
motivations, this case does not present itself in such stark
relief.  There are lingering questions regarding the prosecution
of this action, the parties' negotiations, and the plaintiff's
ultimate position.  But those questions appear to cut in both
directions to a significant degree, and do not warrant adjusting
the lodestar.

### C. Postjudgment Interest on Attorney's Fees Award

The parties have not raised the issue of whether plaintiff
is entitled to interest on her attorney's fee award from the time
of the judgment until this order's calculation of the award.  I

will, nevertheless, resolve it.  See Aiello v. Town of
Brookhaven, 2005 U.S. Dist. LEXIS 11462, at *29-31 (E.D.N.Y. June
13, 2005) ("Although the parties do not raise the issue, the
Court will address the question of interest on its award in order
to circumvent future collateral litigation.").  In Foley, the
First Circuit did "not undertake to decide . . . whether
postjudgment interest begins to accrue from the date a judgment
expressly and unconditionally establishing a party's right to
attorney's fees is entered or from the date of a judgment that
establishes the quantum of such fees (in a case where those dates
differ)."  948 F.2d at 22 n. 16.  No intervening discussion of
the issue by the First Circuit could be found.

     Judge Block of the Southern District of New York recently
took up this question, noting that the Second Circuit also has
not definitively weighed in on the question.

> The majority rule, followed in the Fifth, Sixth, Eighth,
> Ninth, Eleventh, and Federal Circuits, is that interest
> accrues "from the date the party becomes entitled to the
> award even if that award is not quantified until a later
> point."  The majority position is based on the realization
> that, "'while the fee-paying party is under no legal
> compulsion to satisfy its obligation before quantification,
> it also 'suffers no prejudice from any delay in quantifying
> the award because it has use of the money in the interim and
> because the statutory interest rate is tied to the U.S.
> Treasury Bill rate.'"  The minority rule, followed in the
> Third, Seventh and Tenth Circuits, states that interest
> accrues from the date it is quantified.

Aiello v. Town of Brookhaven, 2005 U.S. Dist. LEXIS 11462, at
*29-30 (E.D.N.Y. June 13, 2005) (internal citations omitted).
The Aiello court "align[ed] itself with the majority rule," and,

-21-

in so doing, joined another district court in the Second Circuit. Id. at *30 (citing Albahary v. City & Town of Bristol, 96 F. Supp. 2d 121, 122 (D. Conn. 2000)).  In the absence of controlling First Circuit authority on the question and in light of the lack of prejudice to the defendants, who retained the funds for the intervening period, I will also adopt the majority approach.

### III. Conclusion

The FDCPA mandates an award of attorney's fees to prevailing parties.  Plaintiff prevailed and petitioned the court for fees; for the reasons offered above, I have, in calculating an appropriate lodestar, reduced the rate and hours.  I do not see any reason, consistent with the facts as presented and the requirements of the statute, to reduce that amount further.

Accordingly, I award plaintiff attorney's fees in the amount of $15,490.00.  The award is subject to interest calculated in accordance with 28 U.S.C. § 1961 from May 18, 2005 until the date the award is paid.

/s/ Douglas P. Woodlock

_____

DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE